**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Kevin EDWARDS, Defendant–Appellant.**

**No. 88–2530.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 24, 1990.

Decided April 2, 1990.

See also, D.C., 685 F.Supp. 687.

Michael Shepard, David J. Stetler, Joan G. Fickinger, Asst. U.S. Attys., Crim. Receiving, Appellate Div., Chicago, for plaintiff-appellee.

Lewis Myers, Jr., Childs, Myers & Willis, Chicago, for defendant-appellant.

Before FLAUM and EASTERBROOK, Circuit Judges, and GRANT, Senior District Judge.*

FLAUM, Circuit Judge.

Kevin Edwards was stopped for questioning by law enforcement officers at the Amtrak station in Chicago after arriving by train from Los Angeles. After questioning, the officers detained his luggage and a trained narcotics-detection dog alerted to the presence of narcotics in the luggage. The officers then obtained a search warrant and opened the luggage, discovering cocaine and marijuana. Edwards was subsequently arrested and charged with possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a). The district

court denied Edwards' motion to suppress the contraband and, after a jury trial, he was convicted. Edwards appeals the district court's denial of his motion to suppress. For the reasons stated below, we affirm.

I.

On February 23, 1988, defendant Kevin Edwards stepped off Amtrak Train Number 4 arriving from Los Angeles, California at Union Station in Chicago. As he disembarked from the train into the crowded station, he was observed by Chicago Police Officer Christine Kolman and Detective Thomas Kinsella. Kolman and Kinsella were a part of a Drug Enforcement Agency Airport task force stationed at O'Hare Airport and the Amtrak station in Chicago. Kolman, along with four other members of the task force present at the station, was dressed in civilian clothing. As Edwards de-trained and began walking through the crowded terminal he made eye contact with the agents and proceeded to walk toward the concourse of the station. According to the agents, the eye contact was unusual; most passengers scurry away from their trains looking directly ahead at their intended destination. Their suspicions aroused by the passenger's glance, the agents monitored the defendant's progress through the station. Before reaching the concourse, Edwards looked back over his shoulder at the officers for a second and third time.

Upon entering the concourse, Edwards proceeded to take what Kolman believed to be an unusual route as he headed into a short hallway rather than towards the exit or the arcade area. As he entered the hallway, Edwards caught up to another man who was walking in front of him, later identified by the agents as "Scott." After a short conversation, Scott headed out towards the arcade area and Edwards followed approximately twenty feet behind him. Apparently, the two men were attempting to disguise the fact that they were travelling together. After Edwards

* The Honorable Robert A. Grant, Senior District Judge of the United States District Court for the Northern District of Indiana, is sitting by designation.

looked over his shoulder and made eye contact with the officers for a fourth time they decided to approach him for questioning. At that point, they had been observing him for approximately 10 minutes.

As the officers approached Edwards, Scott put his bags down in the concourse and sat down on them. When the officers reached Edwards and began speaking with him, he continued walking in an apparent attempt to create distance between himself and Scott. The officers immediately asked the defendant if they could speak with him, and he consented. Another member of the DEA task force, Special Agent Orr, then entered the conversation. Kolman asked to see Edwards' train ticket and he responded that he did not have it with him. When asked if he was travelling alone, he replied by pointing to Scott and another man in the concourse that he was travelling with. Orr then left to speak with Scott.

Meanwhile, Kolman asked the defendant for some identification and he cooperated by producing a valid Ohio driver's license. In response to Kolman's question regarding his travels, Edwards explained that he had been showing a Jamaican friend around California, and that they were presently en route back to Ohio. At this point, Officer Orr returned and reported that Scott had produced three one-way train tickets from Los Angeles to Chicago to Indianapolis in the name of Kevin Edwards. The train tickets had been paid for in cash. Scott, who had no identification, had told Orr that he was in town visiting friends. Kolman then informed the defendant that they were conducting a narcotics investigation. According to the agents, Edwards suddenly became visibly nervous; his hands trembled and he stuttered when he talked. When asked whether the bags he was carrying were his, he replied that they were. Kolman then asked him whether he had narcotics in his bag. Edwards said "no", then hesitated, and said that he had not been with his bags all the time and that somebody else could have had access to them. When Kolman asked Edwards for consent to search his bags, noting that he has a right to refuse consent, the defen-

dant refused. Kolman then advised Edwards that he was not under arrest and that he was free to leave but that she was going to temporarily detain his bags for inspection by a narcotics-detection dog. She also told him that if the dog alerted positively to any of the bags, a search warrant would be sought. The defendant was issued a receipt for his bags and he immediately left telling the agents that he had a train to catch.

The bags were then moved to a nearby Amtrak office and approximately fifteen minutes later Detective Kinsella arrived with the narcotics-detection dog. The dog immediately alerted to the presence of narcotics in two of the defendant's bags. After obtaining a search warrant, the agents found 2 kilograms of cocaine and a small amount of marijuana in the bags.

The defendant was subsequently arrested and charged with possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a). Prior to trial, he made a motion to suppress the contraband on the grounds that the officers lacked reasonable suspicion to stop him for questioning at the train station and to detain his bags. After holding a hearing, the trial court denied his motion on the grounds that the defendant's fourth amendment rights were not implicated when the officers initially stopped and questioned him and that "reasonable suspicion existed to temporarily detain the defendant's luggage for a 'sniff test' by a trained narcotics detection dog." The court further found that once the dog positively alerted to the defendant's luggage, probable cause existed to believe that the bags contained narcotics. After a jury trial, Edwards was convicted and sentenced to 8 years and one month in prison.

## II.

The defendant challenges the district court's denial of his motion to suppress claiming that the law enforcement officers lacked the requisite reasonable suspicion to stop him at the train station for questioning and to subsequently detain his bags. With regard to the initial stop and ques-

tioning, he contends that since the officers admitted that he was not violating federal or state laws as he detrained at the crowded station, the three quick glances over his shoulder toward them and the two minute conversation in full public view with another man were insufficient to support a valid *Terry* stop. He also argues that his responses to the agent's queries did not give rise to reasonable suspicion to detain his bags.

Our standard of review of a denial of a motion to suppress is well established. We will not disturb the district court's denial of the motion to suppress unless we find that the decision was clearly erroneous. *United States v. Ingrao*, 897 F.2d 860 at 862 (7th Cir.1990); *United States v. D'Antoni*, 856 F.2d 975, 978 (7th Cir.1988). Our inquiry is factually based and requires that we give particular deference to the district court that had the opportunity to hear the testimony and observe the demeanor of the witnesses. *D'Antoni*, 856 F.2d at 978; *United States v. Black*, 675 F.2d 129, 134 (7th Cir.1982), *cert. denied*, 460 U.S. 1068, 103 S.Ct. 1520, 75 L.Ed.2d 945 (1983).

The fourth amendment does not forbid all searches and seizures, but rather, only those that are unreasonable. *Elkins v. United States*, 364 U.S. 206, 213, 80 S.Ct. 1437, 1442, 4 L.Ed.2d 1669 (1960). Not all police/citizen encounters implicate fourth amendment concerns. *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968). Law enforcement officers "do not violate the fourth amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if he is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions." *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983) (plurality opinion); *United States v. Notorianni*, 729 F.2d 520, 522 (7th Cir. 1984). In this sort of police/citizen encounter, "the degree of suspicion that is required is zero." *United States v. Serna–Barreto*, 842 F.2d 965, 966 (7th Cir.1988).

The proper test for determining whether a given encounter rises to the level of a fourth amendment seizure is "if, in the totality of the circumstances, a reasonable person would not believe that his freedom of movement is restrained, or believes that he remains at liberty to disregard a police officer's request for information, a seizure has not occurred." *United States v. Espinoza–Alvarez*, 839 F.2d 1201, 1205 (7th Cir.1987) (quoting *United States v. Dyer*, 784 F.2d 812, 815 (7th Cir. 1986)). Under this test, we find that the officers did not implicate the defendant's fourth amendment rights when they stopped him in the station and asked him whether they could ask him a few questions. Edwards consented to their request and voluntarily answered their queries. The officers instructed him that he was not under arrest and that he was free to leave at anytime. Furthermore, the agents did not alter the defendant's movements around that terminal, and their questioning was relatively limited. The encounter occurred in a public place and there is no evidence that the questioning was intense or repetitive. *See United States v. Borys*, 766 F.2d 304, 310–11 (7th Cir.1985). There was no evidence of any coercion on the part of the agents. In such a situation, we find that a reasonable person would have felt that he was free to decline and to leave. *United States v. Notorianni*, 729 F.2d 520 (7th Cir.1984).

Edwards, on his part, does not argue that his consent was coerced and involuntary or that he felt that he was not free to leave. Rather, he offers *Reid v. Georgia*, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980) (per curiam), as the controlling precedent. In that case, a passenger in a crowded airport made several glances in the direction of federal narcotics officers as he was heading out of the terminal. The agents approached the passenger outside the terminal and asked to see his airline ticket, at which time he became very nervous. When the agents asked him to return to the terminal he attempted to flee. The Supreme Court found that the defendant's repeated glances at law enforcement offi-

cers were insufficient to support a *Terry* stop. The defendant's reliance on *Reid*, however, is misplaced; the initial encounter between Edwards and the officers and the subsequent questioning did not rise to the level of a *Terry* stop because Edwards consented to the limited intrusion. Therefore, the district court's holding that the fourth amendment was not implicated when the officers initially questioned Edwards was not clearly erroneous.[1]

■ We turn next to the legality of the officers' brief detention of the defendant's luggage for the purposes of subjecting it to a narcotics-detecting dog. Edwards baldly asserts that the district court's determination that the officers had reasonable suspicion was clearly erroneous. Therefore, he concludes, the search violated the fourth amendment and the fruits of the search should have been suppressed under *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

It is well recognized that a brief, warrantless detention of property for further investigative purposes does not violate the fourth amendment if the detention is based upon reasonable suspicion. *United States v. Place*, 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983); *United States v. Skidmore*, 894 F.2d 925 (7th Cir.1990). There is no "litmus test" for evaluating reasonable suspicion; rather, each instance of police conduct must be judged for reasonableness "in light of the particular circumstances." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). Turning to the circumstances in the instant case, we note that the law enforcement agents were aware of the following facts at the time the luggage was seized: (1) Edwards arrived in Chicago from Los Angeles, a major narcotics distribution center; (2) upon arriving he repeatedly made eye contact with the officers

and, rather than immediately exiting the station, stopped to have a brief discussion with a man in a small hallway within the terminal; (3) he then walked several yards behind that man in an apparent attempt to conceal that he was not travelling alone; (4) the defendant told the officers that he was travelling with two other men who were also present in the terminal; (5) during questioning, he became visibly nervous as his hands trembled and he started stuttering after he was told that the officers were part of a narcotics investigation; (6) when asked about his travels he responded that he had been showing a Jamaican friend around California and that "they" were now returning to Ohio. In contrast, his travelling companion told Agent Orr that he was in Chicago visiting friends; (7) his companion possessed three one-way tickets, all in the defendant's name, and all providing for travel from Los Angeles to Chicago to Indianapolis; (8) the tickets had been paid for in cash; and (9) when the agents asked the defendant whether his luggage contained narcotics he first responded "no" but then quickly equivocated that someone else could have had access to his bags. Given that the officers were entitled to assess the totality of the defendant's conduct in light of their own experience, *United States v. Teslim*, 869 F.2d 316, 322 (7th Cir.1989), we find that these factors, in the aggregate, provide ample basis for reasonable suspicion by the officers.

Finally, we note that the brief detention of the defendant's bags (fifteen minutes) satisfies the dictates of *Place* that the limitations defining a *Terry* stop also define the limits of an investigative detention of luggage. In *Place*, the Court stated that "the brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be

---

**1.** This would be a much different case had Edwards initially refused to answer questions. In that situation, we have serious reservations as to whether the officers would have had an articulable and reasonable suspicion that Edwards was engaged in criminal activities. Edwards' propensity to make eye contact with the officers, his conversation in full public view in a hallway in the station, and the fact that he arrived from one of the many known "source" cities (Los Angeles) might well fail to create sufficient suspicion to support a valid *Terry* stop. Fortunately for the government, however, Edwards was a cooperative citizen/drug trafficker.

justified on reasonable suspicion." 462 U.S. at 709, 103 S.Ct. at 2645. Here, the agents were diligent in the effectuation of their duties as less than a quarter of an hour passed before a drug-detection dog was brought to the scene. *See United States v. Teslim*, 869 F.2d 316, 323 (7th Cir.1989) (twenty-five minute detention prior to arrival of canine unit permissible); *United States v. Erwin*, 803 F.2d 1505, 1509 (9th Cir.1986). In sum, we agree with the district court that the defendant's conduct created reasonable suspicion to temporarily detain his luggage for a "sniff test."

### III.

Accordingly, the defendant's claims are without merit and his conviction is AF-FIRMED.