**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Claude HIGH, Defendant–Appellant.**

No. 90–1734.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 3, 1990.

Decided Dec. 27, 1990.

William V. Gallo, Asst. U.S. Atty., Office of the U.S. Atty. and Barry R. Elden, Asst. U.S. Attys., Office of the U.S. Atty., Crim. Receiving, Appellate Div., Chicago, Ill., for plaintiff–appellee.

Rick Halprin and Susan Shatz, Chicago, Ill., for defendant-appellant.

Before WOOD, Jr., CUDAHY and MANION, Circuit Judges.

MANION, Circuit Judge.

Claude High appeals from his conviction for possession with intent to distribute cocaine, a violation of 21 U.S.C. § 841(a)(1). Specifically, High challenges the order of the district court denying his motion to suppress the introduction of the cocaine found in his baggage as evidence against him on the ground that the police officers obtained it through a search and seizure violative of the fourth amendment. We affirm.

### I.

On August 23, 1988, Claude High and a companion, Kevin Caldwell, arrived at Chicago's Union Station on an Amtrak train from Los Angeles, California, a source city for narcotics. Detectives George Mays and George Graham and Sergeant Jerry Robinson, drug enforcement officers, monitored the passengers as they detrained. Among the first passengers to detrain were High and Caldwell who alighted quickly. High was carrying a light green, Samsonite suitcase and clutching a brown carry-on bag tightly under his arm. Detectives Mays and Graham testified at the suppression hearing that High made eye contact with them, then looked back at Caldwell, who was a pace behind him, and the two began to walk a little faster. Graham also noted that High eyed his waist and surmised that High was looking for a weapon or beeper which would have indicated that he was a police officer. The agents followed High and Caldwell, lost sight of them, but then caught up with them near the baggage and waiting area. After again making eye contact with the agents, High tapped Caldwell on the shoulder, and the two then headed for an exit.

Mays and Graham approached High and Caldwell and, walking alongside, displayed their badges and identification and asked if they could speak to them. The officers were wearing plainclothes. High and Caldwell stopped walking and agreed to speak to the agents. Sergeant Robinson in the meantime hung back several paces. Graham asked High and Caldwell if he could see some identification, and the two men produced valid Michigan driver's licenses. Graham returned the licenses and then asked to see their train tickets. High retrieved both his and Caldwell's ticket from the brown carry-on bag, which he continued to clutch tightly. After examining them, Graham returned the tickets. The tickets were one-way and purchased with cash one day before departure. Graham then informed High and Caldwell that he was conducting a narcotics investigation, that they were not under arrest, and that they were free to leave at any time. High then asked if there was a problem. High became very nervous and began to peer around the station, looking toward the exit. In response, Graham reiterated that he was conducting a narcotics investigation and asked if High or Caldwell had any narcotics on them or in their bags. Both replied, "No." Graham then asked if he could search their baggage and told them that they could refuse him permission to search and that he needed their permission. High and Caldwell consented to the search. Mays searched Caldwell's bag, but found nothing. As Graham searched High's brown carry-on bag, he felt a kilogram-

sized package, looked up at Robinson who was standing a few feet behind High and nodded to him. High then bolted toward the exit, and Mays and Robinson gave chase. High got away. High was later arrested at his home in Michigan.

High was charged by way of indictment with one count of knowingly and intentionally possessing with intent to distribute approximately two kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1). High filed a motion to suppress the cocaine seized by the drug enforcement officers, and the district court denied the motion. The court stated that the officers did not need to have an articulable suspicion to approach High and Caldwell, and alternatively found that if the officers needed an articulable suspicion, that they certainly had it. The court found that the officers' actions were not intimidating, and that they did not block High's path or movement.

1. The transcript of the district court's findings are as follows:

[T]he motion to suppress the stop, as well as the fruits thereof, and the search will be denied. I don't believe that a police officer needs to have an articulable suspicion in order to stop an individual for purposes of questioning. A police officer may stop a citizen for a number of reasons, one to ask assistance, as well as to interview or question the person stopped.

In this situation, though, if the law was such that there was a requirement that there be articulable suspicion, I believe that Detective Graham certainly had it, as he testified here.

The eye contact between the officers and Mr. High at least raised the suspicion of the officers. That, in and of itself, probably would not be enough.

The manner in which the defendant was clutching the bag that ultimately turned out to be the narcotics-carrying vessel also was a factor to be considered by the officer.

The scanning by the defendant of the officer's waist area to see if there was a weapon or beeper, at least as the officer observed it, in other words, the defendant basically checking out the individual he made eye contact with, Officer Graham, to see if the officer was a policeman, or at least according to what the officer believed, I think also raised a sufficient suspicion, certainly for the purpose of allowing the officer, Officer Graham, to walk alongside, display his badge in a very noninti-

A jury found High guilty, and the district court sentenced him to ninety-seven months of imprisonment. High appeals, challenging the denial of the motion to suppress.

## II.

The district court, after hearing the testimony of Detectives Mays and Graham, found that High felt free to leave and that the encounter was consensual.[1] High did not testify.

We must uphold the district court's denial of the motion to suppress unless the denial was clearly erroneous. *United States v. Johnson*, 910 F.2d 1506, 1508 (7th Cir.1990). " 'Our inquiry is factually based and requires that we give particular deference to the district court that had the opportunity to hear the testimony and observe the demeanor of the witnesses.' " *Id.* (quoting *United States v. Edwards*, 898 F.2d 1273, 1276 (7th Cir.1990)).

midating way, with open hands, not unlike the Allstate Insurance commercials, and in a very low-keyed manner, asking the defendant, "May I speak with you?", or, "May we speak with you?" It seems to me that at that point Mr. High was not intimidated, despite the fact that Officer Graham is six, three, 220 pounds, and Officer Mays, according to Officer Graham's testimony is about the same height, maybe a little lighter. It seems to me that the physical size should not be considered in connection with intimidation or as an intimidating weapon if it's not used to block the view, passage or means of movement of the defendant. It wasn't here. The officers, when they asked the initial question, were walking alongside, a few feet away, not in front, did not stop or stand in front and block the passage of the defendant or his companion. According to Officer Mays, the defendant started looking nervous, or appeared to be nervous, when the defendant was told that the officers were conducting a narcotics investigation. The fact that the defendant felt free to leave is amply displayed by the fact that the defendant did, in fact, leave when the search was being conducted of the narcotics-carrying bag.

Taking into account all of these factors, I do not believe that any constitutional rights were violated, or any of the defendant's constitutional rights were violated, or that the police acted in any way improper in this initial stop, questioning, and obtaining of consent, so, consequently, as I indicated earlier, the motion to suppress will be denied.

As this court discussed in *Johnson,* the Supreme Court has developed three categories of police-citizen encounters in the context of the fourth amendment: (1) an arrest, requiring the police to have probable cause; (2) an investigatory stop, requiring the police to have specific and articulable facts to give rise to a reasonable suspicion; and (3) a voluntary encounter initiated by non-coercive police questioning, requiring no suspicion at all. *See id.* This court's threshold inquiry must be to determine whether there was a seizure, that is, whether a reasonable person in High's situation would have felt free to leave. If a reasonable person would have felt free to leave, the encounter was consensual, and the fourth amendment is not implicated. High does not address this third category of police-citizen encounters, but simply jumps to a discussion of whether the officers had a reasonable suspicion to stop him. High contends that when a police officer approaches a citizen and asks to see identification and his train tickets without first informing him that he need not comply, no reasonable person in this position would feel free to disregard the officer or to leave. This court has previously rejected such an argument, holding that "the practice of DEA agents in accosting and attempting to question suspected narcotics violators was not coercive per se and the accosted individual would not be deemed to have been seized within the meaning of the Fourth Amendment unless a reasonable person in his position would have believed he was not free to ignore the agents and continue on his way." *United States v. Notorianni,* 729 F.2d 520, 522 (7th Cir. 1984) (citing *United States v. Black,* 675 F.2d 129, 134–35 (7th Cir.1982), *cert. denied,* 460 U.S. 1068, 103 S.Ct. 1520, 75 L.Ed.2d 945 (1983)). "The police 'do not violate the fourth amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if he is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions.'" *Johnson,* 910 F.2d at 1508 (quoting *Florida v. Royer,* 460 U.S.

491, 497, 103 S.Ct. 1319, 1323, 75 L.Ed.2d 229 (1983) (plurality opinion)).

Although we reject the argument that such encounters are coercive per se, our concern in these drug surveillance cases is this: in deciding whether to approach someone, the police rely on a subtle combination of characteristics and actions, many of which could be attributed to any traveler who detrains or deplanes in an unfamiliar terminal. Often, these observations alone are not sufficiently specific and articulable to establish reasonable suspicion to support an investigatory stop. Although we think that this can be attributed to a well-trained eye and good police work, it cannot override the fourth amendment just because it gets good results. Consent then becomes crucial in such situations. We suggest that the better procedure might be for the officers to preface their questions with a statement that the encounter is consensual and that the citizen need not answer and is free to go. We do not intend, however, that this suggestion be taken as a requirement that the officers recite any prefatory warning in a *Miranda*-like fashion. We merely want to emphasize that the police cannot act to intimidate the person or inhibit his or her freedom to leave and not to answer questions.

In this case, however, not only was the fourth amendment not violated, but it was not implicated because High voluntarily consented to the initial encounter and subsequent questioning. The record supports the district court's finding that High felt free to leave. There is no indication that High's consent was induced by coercive police conduct. Detectives Mays and Graham approached High and Caldwell from the side. As the district court found, the officers "display[ed] [their] badges in a very non-intimidating way, with open hands, not unlike the Allstate Insurance commercials, and in a very low-keyed manner, ask[ed] the defendant, ... 'May we speak with you?'" *See Notorianni,* 729 F.2d at 522 (that officers identified themselves as law-enforcement officers is not coercive per se, nor is officer's statement

to defendant that he is conducting narcotics investigation). High and Caldwell came to a stop first and agreed to speak with the officers. Nothing the officers did restrained High's liberty. Although the officers were physically larger than High, the record reveals that they did not use their size to intimidate High or to block his path. The district court found nothing coercive or intimidating in the officers' behavior. The officers spoke in conversational tones and asked for limited information. Their questioning was not repetitive, intense or threatening. Nothing about the officers' conduct indicates that High's consent was other than voluntarily given.

High was not alone, but had Caldwell's company when the officers approached him. Consequently, even if High was cognizant of Robinson's presence, making it a three-on-two encounter, we do not think that this was so intimidating that High would not have felt free to leave since the agents did not surround High and Caldwell or otherwise position themselves to impede High's movement.

Nor were the physical surroundings isolating or restraining. The encounter took place in a busy area of Union Station in the middle of one to two hundred travelers. The district court's finding that a reasonable person in High's position would have felt unrestrained and free to disregard the officers was not clearly erroneous. Because in a consensual police-citizen encounter, "the degree of suspicion that is required is zero," *United States v. Serna–Barreto*, 842 F.2d 965, 966 (7th Cir.1988), we need not address the question of whether the officers had reasonable suspicion to approach High and Caldwell.

### III.

Accordingly, we affirm the order of the district court denying High's motion to suppress and the judgment of conviction.

AFFIRMED.