UNITED STATES of America,
Plaintiff–Appellee,

v.

Alvin BERKE, Defendant–Appellant.

No. 90–2755.

United States Court of Appeals,
Seventh Circuit.

Argued March 6, 1991.

Decided April 23, 1991.

Rehearing Denied May 22, 1991.

Diane L. Saltoun and Barry R. Elden, Asst. U.S. Attys., Office of the United States Attorney, Chicago, Ill., for plaintiff-appellee.

Stephen J. Finta, Fort Lauderdale, Fla., for defendant-appellant.

Before RIPPLE, and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

RIPPLE, Circuit Judge.

Defendant-appellant Alvin Berke was charged in a two-count indictment with possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and conspiracy with intent to distribute cocaine in violation of 21 U.S.C. § 846. Prior to a bench trial, Mr. Berke moved to suppress evidence. He contended that the cocaine

was discovered by law enforcement officials as the result of an illegal search and seizure. The district court denied Mr. Berke's motion and found him guilty on both counts. The district court sentenced Mr. Berke to the mandatory minimum sentence of five years' imprisonment, to run concurrently on both counts. The term of imprisonment is to be followed by a four-year term of supervised release. Mr. Berke brought this timely appeal challenging the district court's denial of his suppression motion and his sentence. For the following reasons, we affirm the judgment of the district court.

# I

## BACKGROUND

On January 15, 1987, Amtrak Police Department investigator Dennis Kroll identified Alvin Berke, via computer printout, as a potential drug courier. The information available to Kroll indicated that Mr. Berke left Deerfield Beach, Florida, a small town near Miami, a known drug source city. The planned final destination was Milwaukee, Wisconsin. Travelling alone, he purchased a one-way ticket with cash just prior to departure and reserved a sleeping compartment. Amtrak officials received no answer when they telephoned the "call back" number Mr. Berke left with his reservation. Kroll contacted drug enforcement officials and informed them that Mr. Berke fit the drug courier profile and was scheduled to arrive at Chicago's Union Station at 9:41 a.m. on January 16.

As Mr. Berke detrained in Union Station, Amtrak employees identified Mr. Berke to Kroll and five members of a drug task force team that consisted of Chicago police officers and Drug Enforcement Administration (DEA) agents. The agents followed Mr. Berke to the main waiting room in the station. Upon reaching that area, Mr. Berke sat on a bench. Officers Mel Schabi-

lion and Richard Boyle approached Mr. Berke and took seats on either side of him. They identified themselves as law enforcement officials and asked to speak with him. Mr. Berke consented. Upon request, Mr. Berke showed the officers his Florida driver's license and his train ticket. The officers informed Mr. Berke that they were conducting a narcotics investigation and requested permission to look in or examine his luggage.[1] Mr. Berke was informed that he was not under arrest and could leave at any time. He also was told that he need not comply with the request to look inside the bag. Mr. Berke told the officers to "go ahead." At the bottom of the suitcase, the officers found a rectangular package wrapped in brown plastic or vinyl masking tape; the officers suspected that the package contained cocaine. A field test later verified that the substance was cocaine.

Mr. Berke was arrested and taken to a security office at the Amtrak station. Mr. Berke was advised of his *Miranda* rights and signed a form waiving these rights.[2] He told the task force personnel that an unknown person gave him the package in Florida and asked him to deliver it to an unknown person in Milwaukee for the fee of $1,000. He stated that he did not know what was in the package, but suspected, because of the suspicious circumstances surrounding the delivery, that it contained cocaine. Mr. Berke agreed to attempt to complete the delivery. Therefore, he and several of the officers completed the train journey to Milwaukee. After waiting approximately an hour, Mr. Berke was paged over the loudspeaker for a telephone call; the caller told him to return to Florida with the package.

# II

## ANALYSIS

Mr. Berke raises several issues on appeal. He contends that the encounter at

---

1. The parties dispute whether the officers asked Mr. Berke whether they could "look" in his bag or "search" his bag. The district court resolved this conflict by finding that the officers asked to "look" into or "examine" his luggage. *See infra* p. 1222.

2. In Mr. Berke's affidavit attached to his suppression motion, he contended that he was not advised of his rights and did not sign the waiver form until much later that evening. However, he does not challenge the voluntariness of statements made after the cocaine was discovered.

the Amtrak station was an illegal seizure of his person in violation of the fourth amendment. He contends that, because of this illegal detention, the search of his bag is invalid. In the alternative, Mr. Berke argues that, if his consent is valid, he agreed only to permit the officers to "look" into the bag, not search it. Because the officers' search went beyond the scope of consent, any evidence found in the illegal search should be suppressed. Finally, Mr. Berke challenges the length of his sentence. While recognizing that five years' imprisonment is the statutory mandatory minimum, he argues that the district court was authorized to impose, and should have imposed, a sentence less than the statutory minimum because of his substantial assistance to the government.

## A. The Fourth Amendment

### 1. The initial encounter

 The district court determined that Mr. Berke's encounter with the law enforcement officers was not protected by the fourth amendment. Voluntary encounters between a private person and law enforcement officers are not seizures and, consequently, not subject to the strictures of the fourth amendment. The question of whether a particular encounter is voluntary "is a factual one, dependent on the circum-

stances of each case; accordingly, our standard of review is a limited inquiry into whether the decision of the district court was clearly erroneous." *United States v. Espinosa–Alvarez*, 839 F.2d 1201, 1205 (7th Cir.1987); *see also United States v. Edwards*, 898 F.2d 1273, 1276 (7th Cir. 1990). In *Edwards*, the court noted:

> The proper test for determining whether a given encounter rises to the level of a fourth amendment seizure is "if, in the totality of the circumstances, a reasonable person would not believe that his freedom of movement is restrained, or believes that he remains at liberty to disregard a police officer's request for information, a seizure has not occurred."

898 F.2d at 1276 (quoting *Espinosa–Alvarez*, 839 F.2d at 1205 (citations omitted)). Following this "totality of circumstances" approach, the district court found that Mr. Berke was approached in a public place and was told that he was not under arrest.[3] The officers explained that they were conducting a narcotics investigation. In addition, when asking for consent to examine Mr. Berke's bags, the officers again told him that he was not required to consent and that he was free to leave. Suppression Tr. of May 4, 1989 at 91, 112. The district court also found that there was no evidence of coercion or physical restraint.[4] There-

---

3. Judge Manion's thoughtful observation in *United States v. High*, 921 F.2d 112, 115 (7th Cir.1990), bears repeating:

> Although we reject the argument that such encounters are coercive per se, our concern in these drug surveillance cases is this: in deciding whether to approach someone, the police rely on a subtle combination of characteristics and actions, many of which could be attributed to any traveler who detrains or deplanes in an unfamiliar terminal. Often, these observations alone are not sufficiently specific and articulable to establish reasonable suspicion to support an investigatory stop. Although we think that this can be attributed to a well-trained eye and good police work, it cannot override the fourth amendment just because it gets good results. Consent then becomes crucial in such situations. We suggest that the better procedure might be for the officers to preface their questions with a statement that the encounter is consensual and that the citizen need not answer and is free to go. We do not intend, however, that this suggestion be taken as a

requirement that the officers recite any prefatory warning in a *Miranda*-like fashion. We merely want to emphasize that the police cannot act to intimidate the person or inhibit his or her freedom to leave and not to answer questions.

We also note that, in *United States v. Sterling*, 909 F.2d 1078, 1082 (7th Cir.1990), this court specifically held that:

> Having invited one to depart from their presence, officers cannot use such departure as the single additional event that ripens their preexisting concerns to the "founded suspicion" that a *Terry* stop requires.

4. Mr. Berke argues that the encounter ripened into a stop protected by the fourth amendment because he was the focus of particularized suspicion. In *United States v. Johnson*, 910 F.2d 1506, 1509 (7th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 764, 112 L.Ed.2d 783 (1991), this court held that the fourth amendment is not implicated even though the police inevitably initiate the encounter and seek to speak with those fitting the drug courier profile. Mr. Berke also

fore, the encounter was voluntary and did not implicate the strictures of the fourth amendment.[5] The record supports the district court's findings.[6] Because the encounter was not a seizure under the fourth amendment, Mr. Berke's argument that his consent to search his bag was invalid because it was the result of an illegal detention has no merit.

### 2. Search of the bag

 Mr. Berke also argues that the search of his bag went beyond the scope of his consent. The parties dispute whether the officers asked to "look" into the bag or "search" the bag. Mr. Berke contends that he gave permission for the officers to look into, but did not consent to a full-scale search of, the luggage. In resolving this conflict, the district court held:

> What is apparently in dispute is the scope of the consent given and this broader issue as related to the question of whether or not Mr. Berke was asked for permission to look into his bag or whether the word search was used. . . .
>
> My own view is that the agents asked to look into the bag or to examine the bag. It is also my view that this request put the defendant on notice that if consent was to be given, it was reasonable for the defendant to expect that the contents of the bag were going to be looked at. It was not reasonable to assume that the agents were going to be content at glimpsing solely at top portions of the contents of the bag.
>
> The defendant neither asked for clarification of what the agents meant, nor did he express any limitations on the agents' perusal of the contents of the bag, and fairly and reasonably understood his okay to the agents' request manifested an acquiescence to an inspection of the contents of the bag. As such, it was voluntary.

Tr. of May 9, 1989 at 5–6.[7] The officers informed Mr. Berke that they were conducting a narcotics investigation. It was

---

[5] This court has recently decided several cases with similar fact patterns. In each of these cases, this court has upheld the findings of the district court that such encounters are voluntary and, therefore, not protected by the fourth amendment. *See United States v. High,* 921 F.2d 112 (7th Cir.1990); *Johnson,* 910 F.2d 1506 (7th Cir.1990); *United States v. Sterling,* 909 F.2d 1078 (7th Cir.1990); *United States v. Edwards,* 898 F.2d 1273 (7th Cir.1990).

[6] We note that the district court did not accept the evidence proffered by the government indiscriminately. The court also heard testimony that Mr. Berke appeared to look nervously over his shoulder as he detrained. The court rejected this testimony:

> I do not credit the testimony that the defendant was nervously looking over his shoulder

while he was walking from the station to the main waiting area. . . . I have yet to try a case, hold a hearing or read reported cases on the subject in which a person under observation failed to look around nervously. It has become SOP [Standard Operating Procedure] for agents to say it happened and for Courts to say that added to objective suspicion. I reject that here.

Tr. of May 9, 1989 at 7.

[7] In support of his position, Mr. Berke cites *United States v. Dichiarinte,* 445 F.2d 126 (7th Cir.1971). That case, however, supports the government's position that even if the officer said "look," it was apparent that Mr. Berke consented to a search. In *Dichiarinte,* the appellant allowed law enforcement officers to go to his home to "look" for narcotics. The police, however, exceeded the scope of consent by reading the appellant's personal papers. Dichiarinte subsequently was convicted of tax evasion. The court held that Dichiarinte consented only to a "search" for narcotics. Therefore, the search exceeded the scope of consent. The court held: "Government agents may not obtain consent to search on the representation that they intend to look only for certain specified items and subsequently use that consent as a license to conduct a general exploratory search." *Id.* at 129. Here, as we note in the text, Mr. Berke knew, before he agreed to the search, that the officers were involved in a narcotics investigation.

---

*[text continues from middle column:]* emphasizes the officers' testimony that, if consent to search a bag is denied, they inform the individual that they have a right to detain the bag. However, there is no indication that Mr. Berke was told his bags would be detained. On the contrary, the officers testified that Mr. Berke consented to the search; therefore, they had no need to give him that information. Mr. Berke offered nothing to contradict that testimony. *Cf. United States v. Jaramillo,* 891 F.2d 620, 623–24 (7th Cir.1989) (although initial encounter between police and defendants not protected by fourth amendment, consensual encounter ended when police requested consent for pat-down search).

clear that their aim was to determine whether Mr. Berke's bag contained narcotics. Mr. Berke opened the suitcase for the officers. He should have expected that the officers would examine the contents to discover whether narcotics were within the bag. Moreover, a defendant's conduct can be indicative of the scope of a consensual search. *See United States v. Hardin*, 710 F.2d 1231 (7th Cir.1983), *cert. denied*, 464 U.S. 918, 104 S.Ct. 286, 78 L.Ed.2d 263.[8] Nothing in the record indicates that Mr. Berke attempted to clarify or withdraw his consent after he realized that the officers were going to search, not just "look" inside the suitcase. Consequently, assuming the officers only asked to "look" inside the bag, under the facts of this case, such a request cannot be interpreted as anything but a request to search the luggage for narcotics.

### B. *The Sentence*

■ The district court sentenced Mr. Berke to five years' imprisonment on each count, to run concurrently, and to four years of supervised release to be served after the period of imprisonment.[9] Mr. Berke contends that, pursuant to 18 U.S.C. § 3553(e), the district court should have sentenced him below the mandatory five-year minimum because of his substantial assistance to the government. That section provides:

Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

At the sentencing hearing, the government agreed that Mr. Berke cooperated. However, the government did not move 'to reduce the sentence below the mandatory minimum. Therefore, Mr. Berke moved to compel the government to make the motion based on the government's acknowledgment that Mr. Berke had cooperated to the extent that he was able. In denying Mr. Berke's motion, the court stated:

So, what the Court is facing is a congressionally-mandated minimum sentence of five years with a minimum period of supervised release on Count II of four years. So, since I do not have any discretion in my judgment to go below that—if I had discretion, I would go below that—but since I do not have discretion to go below that, I am encumbered to impose the minimum mandatory sentence that Congress has provided and I do that.

Tr. of Sept. 12, 1989 at 13.

Section 3553(e) requires, as a prerequisite for a downward departure, a motion by the government requesting a reduction below the statutory minimum sentence. Courts consistently have upheld the motion requirement of this section, as well as its counterpart under the Sentencing Guidelines, § 5K1.1. *See United States v. Coleman*, 895 F.2d 501, 505 (8th Cir.1990) ("for a court to depart based upon the substantial assistance under § 3553(e), the government must first file a motion"); *see also*

---

**8.** In *Hardin*, the defendant consented to a patdown search for narcotics. During this search, law enforcement officers seized airplane tickets and travel materials linking him to the possession of a suitcase that contained cocaine. Hardin contended that the officers exceeded the scope of his consent, or in the alternative, that he withdrew consent before the travel materials were discovered. This court rejected the argument and held that, when Mr. Hardin handed the papers to the officers, he consented to expand the scope of the search. Even if Mr. Hardin's initial actions could have been construed as evidence of intent to withdraw consent, his subsequent actions of removing the materials and handing them to the officers "implied a contrary meaning. In either case, the gesture, when viewed in the context of his other actions was at best ambiguous, and given his general cooperative attitude during the search, wholly ineffective to communicate an intention to rescind or narrow his consent." 710 F.2d at 1236–37.

**9.** Mr. Berke's offense occurred on January 16, 1987. He was not sentenced under the Sentencing Guidelines because they did not become effective until November 1, 1987. *See United States v. Stewart*, 865 F.2d 115 (7th Cir.1988).

*United States v. Lewis,* 896 F.2d 246 (7th Cir.1990) (upholding motion requirement of § 5K1.1); *United States v. Wilson,* 922 F.2d 1336, 1342 (7th Cir.1991) (upholding the "parallel" motion requirements of § 3553(e) and § 5K1.1). The government's agreement at the sentencing hearing that Mr. Berke cooperated does not constitute a *de facto* motion. Our colleagues in the Eighth Circuit have dealt squarely with that argument:

> The district court concluded that because the government's cooperation letters constituted the functional equivalent of a § 3553(e) motion, there was a sufficient basis for the trial court to depart. We disagree. The motion requirement is clear and unambiguous.

*Coleman,* 895 F.2d at 505. Because the government did not submit the required motion, the district court correctly concluded that it lacked the authority to sentence Mr. Berke below the mandatory minimum.[10]

### Conclusion

For the reasons stated above, the decision of the district court is affirmed.

AFFIRMED.

---

10. This case presents no question of bad faith or a vindictive refusal to make a substantial assistance motion. *See United States v. Donatiu,* 922 F.2d 1331, 1335 (7th Cir.1991).