**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Traci PARKER, Defendant–Appellant.**

No. 87–3023.

United States Court of Appeals, Seventh Circuit.

Argued April 3, 1991.

Decided July 10, 1991.

Anton R. Valukas, U.S. Atty., Brian W. Blanchard, Office of the U.S. Atty., Crim. Div., David J. Stetler, Asst. U.S. Atty., James R. Ferguson, and Victoria J. Peters, Asst. U.S. Attys., Office of the U.S. Atty., Crim. Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Mark A. Locascio and Ronald S. Shapiro, Orzoff, Shapiro & Locascio, Northbrook, Ill., for defendant-appellant.

Before FLAUM and RIPPLE, Circuit Judges, and MOODY, District Judge.[*]

FLAUM, Circuit Judge.

When Amtrak Police Department Special Agent Robert Suave reviewed the passenger manifest for Train No. 4 on July 15, 1987, one passenger caught his attention. "Tiffany Johnson," later identified as the appellee Traci Parker, had purchased a one-way ticket from Los Angeles to Chicago less than an hour before the train departed,

---

[*] The Honorable James T. Moody, District Judge for the Northern District of Indiana, is sitting by designation.

and had paid for the $400 ticket in cash. The manifest revealed that Parker was travelling alone and that she had reserved a private roomette on the train, but did not indicate an address from whence she had come or one to where she was going. She had given the ticket agent a "call back" phone number, but no one answered when Agent Suave tried the number. All of this information was consistent with the drug courier profile used by police investigating the importation of drugs into the Chicago area by train. *Compare, e.g., United States v. Berke*, 930 F.2d 1219, 1220 (7th Cir.1991); *United States v. High*, 921 F.2d 112, 113 (7th Cir.1990); *United States v. Johnson*, 910 F.2d 1506, 1507 (7th Cir. 1990); *United States v. Sullivan*, 903 F.2d 1093, 1094–95 (7th Cir.1990); *United States v. Edwards*, 898 F.2d 1273, 1274–75 (7th Cir.1990); *see also United States v. Bell*, No. 90–1903, and *United States v. Williams*, No. 90–2630, (opinions forthcoming). Suave, along with other members of a combined state-federal drug task force, decided to question Parker when she arrived in Chicago later that afternoon.

Suave and another agent, Robert Moss, boarded the train at an unscheduled stop outside of Chicago. Paula Rempalski, who was the attendant of the car in which Traci Parker was riding, pointed her out to the agents. She also showed them a large beige suitcase in the baggage compartment that belonged to Parker. When the train arrived at Union Station, Parker walked from the train into the station, where she met a man, later identified as Clayton Harris, and handed him a blue carry-on bag. After a brief conversation, Harris began walking toward an exit. Detective Thomas Kinsella of the Chicago Police Department, a task force member who had been waiting in the station, overheard Parker tell Harris that she was going to get "the other bag." As Harris walked toward an escalator, Detective Kinsella identified himself as a police officer and asked if he could speak with Harris, who agreed. Harris told Kinsella that he was carrying a suitcase for his girlfriend, Traci, but could not tell Kinsella

Traci's last name. Harris said that Traci had gone to pick up her other bag.

In the meantime, Parker had turned to the Amtrak baggage handler. Agent Moss observed him put a bag on his cart for the defendant; afterward she began walking in the same direction as had Harris. Followed immediately by Agent Suave, Parker came upon Harris and Detective Kinsella at the foot of the escalator. Agent Suave identified himself to the defendant, and asked if he and Kinsella could speak with her. Parker agreed. The officers asked for some identification and to see Parker's train ticket. Parker said that she had left the ticket on the train. She told Suave that her name was Tiffany Johnson, but her Illinois Driver's License revealed it to be Traci Parker. Parker explained to Suave that she always uses an assumed name when she travels. Detective Kinsella asked Parker whether she had any other baggage and she replied "no."

At this point, the group proceeded to the baggage area, about 100 feet away. The parties dispute whether the law enforcement officers *asked* Parker to accompany them or whether they *told* her to do so. Detective Kinsella and Agent Suave testified at a suppression hearing that Kinsella advised Parker and Harris that they were not under arrest, that they were free to leave, and asked them to accompany him to the baggage area. According to Parker, however, Kinsella said, "We'll all take a walk up to the luggage counter."

When the group arrived at the baggage claim area, Agent Suave showed his identification to the baggage handler he had seen removing baggage from Train Number 4 and asked if he had any luggage for Parker, pointing to her as he did so. The baggage handler said yes, and indicated that the beige suitcase was Parker's. Parker denied that the suitcase was hers, to which the redcap replied, "That's the bag you gave me." Detective Kinsella laid the bag on the floor and asked Parker's permission to search it. Parker told Kinsella that she didn't care if he searched the bag since it did not belong to her. When Kinsella unzipped the bag, however, Parker

asked him, "Don't you need a search warrant to do that?" Kinsella asked Parker again if the suitcase belonged to her and if she wanted him to stop. Parker again denied the bag was hers and told Kinsella to go ahead.

The suitcase contained almost a kilogram of cocaine and a half gallon of a liquid containing Phencyclidine (PCP). When they discovered these items, the officers arrested Parker and advised her of her rights. She was taken to the DEA offices for questioning, where she signed a waiver of her rights and confessed that she was to be paid $5,000 for transporting the drugs from Los Angeles. She was indicted for conspiring to possess with intent to distribute cocaine and PCP and for possessing those two drugs. Parker moved to quash her arrest and to suppress all of the evidence in the case on the ground that she had been seized at the train station without probable cause. The district court denied the motion, Parker went to trial, and the jury found her guilty on all three counts. The district court sentenced Parker to thirteen years of incarceration on each of the counts, to be served concurrently.

Parker raises five claims—as best we can tell—on appeal. First, she renews her argument that she was seized without probable cause in the train station. Second, she claims that the district court should not have admitted the evidence relating to the baggage handler's statement that the beige suitcase belonged to Parker. Third, Parker contends that the evidence was insufficient to establish her ownership or control over the beige suitcase containing the drugs. Fourth, the district court ruled that neither the government nor the defense could comment upon the fact that the baggage handler did not testify at trial; Parker says this ruling was grossly unfair. Finally, Parker maintains that her sentence was excessive. We address each claim in turn, and affirm the appellant's convictions and sentence.

■ Parker's fourth amendment claim relates to her movement from the foot of the escalator to the baggage claim area of the train station. She concedes that her initial encounter with the task force agents did not implicate her fourth amendment rights because she agreed to answer the officers' questions. When a defendant consents to questioning by police, there is no fourth amendment seizure. *Berke*, 930 F.2d at 1221; *United States v. Durades*, 929 F.2d 1160, 1163 (7th Cir.1991). Parker maintains that the officers seized her without probable cause, however, by directing her to accompany them to the luggage counter 100 feet away. In denying Parker's motion to suppress, the district court specifically found that Parker consented to accompany the officers. We owe deference to findings of fact made during suppression hearings,[1] *United States v. Hagan*, 913 F.2d 1278, 1282 (7th Cir.1990), and in this case the district court's findings are easily supported. The district court explicitly credited Detective Kinsella's testimony that he twice told Parker that she was not under arrest, once when he and Agent Suave first began questioning Parker, and again when he asked Parker and Harris to step over to the baggage area. By contrast, the court explicitly discredited Parker's testimony, concluding that she had perjured herself. At any rate, we do not place dispositive weight on the question of whether Detective Kinsella advised Parker *a second time* that she was free to leave as nothing had occurred, up to that point, to suggest to Parker that Kinsella's position had changed and that she was no longer free to terminate the interview. None of the officers ever drew a weapon or used any force to detain Parker or Harris, and the entire encounter took place in a crowd-

---

1. We sometimes phrase this as "a district court's denial of a motion to suppress is subject to the clearly erroneous standard of review," but that is a somewhat misleading shorthand for the more complete statement that the factual findings underlying a decision to deny a motion to suppress, like any other factual findings, are subject to clearly erroneous review. Legal determinations made in suppression hearings, by contrast, are subject to *de novo* review just as in any other district court proceeding. *See United States v. McKinney*, 919 F.2d 405, 412–13 & n. 8, 424–25 (7th Cir.1990); *United States v. Towns*, 913 F.2d 434, 439 (7th Cir.1990); *United States v. Reis*, 906 F.2d 284, 288 (7th Cir.1990); *United States v. Lima*, 819 F.2d 687, 688 (7th Cir.1987).

ed public train station. Moreover, Parker admitted that the officers did not threaten her in any way, and used courteous language when speaking to her. Even her own testimony supports the district court's conclusion that she consented to go with the officers to the baggage area. Parker testified that Kinsella directed her "[t]o follow him, accompany him to another area," R. 61 at 50, which was "away from the crowd," R. 61 at 52, suggesting that Parker understood that the officers wanted only to continue questioning her in a less congested part of the station. Most significant, Parker stated that she went with the officers because she was curious about what was going on. She also said that she didn't feel free to leave, but in light of the other evidence, we affirm the district court's determination that Parker consented to accompany the officers to the baggage area.

■ The defendant's second, third, and fourth claims relate to the evidence linking her to the beige suitcase in which Detective Kinsella found cocaine and PCP. In Parker's view, the principal evidence linking her to the suitcase was the statement of the baggage handler who told the officers that the beige bag was the one Parker had given him. When the redcap responded to Detective Kinsella's inquiry about whether he had any luggage for Parker, he pointed to the beige bag. Then, when Parker denied the bag was hers, the redcap stated: "That's the bag you gave me." Parker characterizes these statements as inadmissible hearsay, but doesn't explain why their admission was erroneous. We see no reason the redcap's statements should have been excluded; they were admissible under

the present sense impression exception to the hearsay rule, FED.R.EVID. 803(1).[2] "The underlying rationale of the present sense impression exception is that substantial contemporaneity of event and statement minimizes unreliability due to defective recollection or conscious fabrication. There is no *per se* rule indicating what time interval is too long under Rule 803(1)...." *United States v. Blakey*, 607 F.2d 779, 785 (7th Cir.1979). In this case, the interval between the event—when Parker directed the baggage handler to pick up her beige bag on the train platform—and the declarant's statement concerning the event—the redcap's statements to the police officers—was extremely short. The evidence indicated that after showing the redcap her bag, Parker walked a short distance to the foot of an escalator, where the officers asked her four or five questions. The group then walked 100 feet or so to the baggage area, where the redcap made his statements. In the meantime, the redcap transported the luggage from the train to the claim area. We conclude that the redcap's statements were sufficiently contemporaneous to satisfy the requirements of Rule 803(1).[3] Our conclusion is buttressed by the intrinsic reliability of the statements.[4] The redcap, who knew nothing of the defendant or the agent's suspicions about her, and who knew nothing about the contents of any of the bags, simply pointed out the bag the defendant had given him moments before. Had he pointed out the wrong bag, or had the defendant never given him a bag, the redcap would have incurred the wrath of the bag's true owner, and likely that of his employer as well. Under these circumstances, there is simply

---

2. Parker's indication to the redcap that the beige bag belonged to her was not hearsay because it was an admission. *See* FED.R.EVID. 801(d)(2)(A).

3. The defendant lodged only a general objection to the admission of one of the redcap's statements, which the court overruled (except as to an improper characterization of the redcap's tone as "defensive") without further comment. The government argues that the defendant therefore waived his right to object to the admission of these statements absent plain error. In light of our determination that the statements

were admissible, we need not resolve this question. We note only that if we assume that the defendant's objection encompassed her concerns about rule 803(1), it is reasonable also to assume that the district court's ruling addressed those concerns as well.

4. In her Reply Brief, Parker also suggests that admission of this evidence violated the confrontation clause of the sixth amendment. She did not raise this claim in her initial brief, preventing the government from responding, so this claim is waived. *Durades*, 929 F.2d at 1165.

no reason to question the reliability of his statements.

■ As for the evidence establishing Parker's ownership of the bag, if the redcap's statements aren't enough (they are), we need only look to Parker's confession, in which she admitted transporting the suitcase to Chicago from Los Angeles. Parker does not claim that the confession was coerced or otherwise defective; her only claim that the confession was inadmissible stems from her claim, rejected above, that she was seized illegally in Union Station. The government points to a great deal of other evidence probative of Parker's connection to the bag, but her confession alone is more than sufficient.

■ Parker also challenges the district court's decision not to permit her to comment upon the government's failure to call the Amtrak redcap as a witness at trial. It is unfair, she maintains, to permit the government to introduce the testimony through a hearsay exception while denying her the opportunity to comment on the government's tactic. We leave such decisions to the discretion of the district court. As we explained in *United States v. Sblendorio*, 830 F.2d 1382, 1394 (7th Cir.1987), *cert. denied*, 484 U.S. 1068, 108 S.Ct. 1034, 98 L.Ed.2d 998 (1988):

> The reasons for not calling witnesses are so many and so complex ... that a full exploration could take the trial far afield. The traditional position, limiting comment by judge or counsel to a witness under the control of the adverse party, therefore is sound. [T]he administration of this principle, as of other prudential rules, is committed to the sound discretion of the district courts.

Citing *Sblendorio*'s conclusion that the better course is usually not to permit comment upon missing witnesses not under the control of either party, *see id.*, the district court in this case decided not to permit either side to comment on the absence of testimony from the redcap. The court observed that if it allowed defense counsel to comment upon the absence of the redcap, "that will just evoke a response, from the government, that Mr. Gant [Parker's coun-

sel] ... could subpoena the redcap; I don't think the jury should have to listen to that repartee back and forth, of nonevidence." R. 66 at 297. We see no abuse of discretion in that decision. Indeed, we note that the district court appears also to have been motivated, in part, out of concern to protect the defendant's fifth amendment right not to testify. Had the court allowed the defense to comment on the absence of government witnesses, the court would have been obliged to permit the government to engage in the same tactic. *Sblendorio* says that the government may comment on the failure of the defense to call witnesses or rebut the government's case, as long as the comments do not use the defendant's own failure to testify as evidence against him, but the district court recognized that permitting the government to go down this path places the defendant's fifth amendment privilege at some risk should the prosecutor, whether directly or indirectly, intentionally or inadvertently, focus the jury's attention on the defendant's decision not to testify. We are particularly unwilling to disturb an evidentiary ruling that springs from solicitude for the constitutional rights of a defendant.

■ Parker's final claim relates to the length of her sentence. Parker's conviction for possessing 1700 grams of the PCP mixture carried with it a mandatory minimum sentence of ten years. *See* 21 U.S.C. § 841(b)(1)(A)(iv). Her conviction for possessing the 900 plus grams of cocaine carried with it a mandatory minimum sentence of five years. *See* 21 U.S.C. § 841(b)(1)(B)(v). Her conspiracy conviction carried no mandatory minimum sentence, but permitted the district court to impose a sentence of up to life imprisonment. *See* 21 U.S.C. § 846 (prior to 1988 amendment). The district court sentenced Parker to three concurrent thirteen-year periods of incarceration, and Parker objects that this sentence exceeds the sentence mandated by the Sentencing Guidelines. Her attempt to invoke the guidelines is unavailing, however, since the guidelines apply only to *conduct* occurring after November 1, 1987, not to sentences imposed

after that date. *United States v. Stewart,* 865 F.2d 115, 116–18 (7th Cir.1988). It is also misguided, since as her own calculations demonstrate, Parker's sentence under the guidelines would have been only five months shorter than the sentence the district court imposed. Since time served under guidelines sentences is "real time"—the guidelines greatly restrict the availability of parole—Parker would, in all likelihood, serve *more* time in prison under a guidelines sentence than she will serve under the nominally longer pre-guidelines sentence she received (the presentence report estimated that she would be incarcerated for two to three years).

■ Parker also maintains that the court failed to consider her youth (she was twenty-three years old when she was arrested), her education (she had several years of college) and her unblemished record when she committed these offenses. The court did consider these facts, however—*see* R. 62 at 13—and they played a part in the court's decision not to sentence Parker to *more* than thirteen years in prison. The district court also considered the fact that Parker perjured herself during the hearing on the motion to suppress, as well as her seeming "indifference to the heartache and to the misery that would be caused to other people on the streets of Chicago had the cocaine and the PCP been distributed...." In a case in which the defendant's conduct predates the advent of the Sentencing Guidelines, we will vacate a sentence only if the sentencing judge " 'relied upon improper considerations or unreliable information in exercising his discretion or failed to exercise any discretion at all in imposing the sentence.' " *United States v. George,* 891 F.2d 140, 143 (7th Cir.1989) (quoting *United States v. Harris,* 761 F.2d 394, 402–03 (7th Cir.1985)). The district court was permitted to consider these additional factors and, although Parker's sentence is lengthy, we cannot say that the district court abused its discretion by concluding that Parker warranted a sentence longer than that required by the statutory minimum.

The defendant's convictions and sentence are therefore AFFIRMED.