**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Tora BELL, Defendant–Appellant.**

**No. 90–1903.**

United States Court of Appeals, Seventh Circuit.

Argued April 3, 1991.

Decided July 14, 1992.

As Amended July 22, 1992.

---

Patrick B. Murray (argued), Office of U.S. Atty., Crim. Div., Barry R. Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Thomas D. Decker, Richard H. McLeese (argued), Decker & Associates, Chicago, Ill., for defendant-appellant.

Before FLAUM and RIPPLE, Circuit Judges, and MOODY, District Judge.*

MOODY, District Judge.

Defendant–Appellant Tora Bell appeals her conviction on one count of possessing a controlled substance with intent to distribute, 21 U.S.C. § 841(a)(1), and one count of travelling in interstate commerce while engaged in unlawful narcotics activity, 18 U.S.C. § 1952. We affirm.

On May 19, 1987, Chicago police arrested Bell at Union Station after discovering narcotics in her possession. Bell had travelled from Los Angeles to Chicago by train, and had just detrained at Union Station when the police first approached her. The police targeted Bell for questioning based on her conformance to a standard "drug courier profile." After some initial questioning, the police discovered that Bell was travelling under a false name. Eventually, Bell consented to a search of her travel bags, in which the police found marijuana and cocaine.

Before trial, Bell moved to suppress the contraband on the ground that it was the fruit of an illegal seizure of her person. The district court denied her motion. We may reverse the decision denying the motion to suppress only if the decision was clearly erroneous. *United States v. Spears*, 965 F.2d 262, 272 (7th Cir.1992). In reviewing this matter, "we give particular deference to the district court that had the opportunity to hear the testimony and observe the demeanor of the witnesses." *United States v. Edwards*, 898 F.2d 1273, 1276 (7th Cir.1990) (*quoted in United States v. Johnson*, 910 F.2d 1506, 1508) (7th Cir.1990)).

In its fourth amendment opinions, the Supreme Court has defined three types of police-citizen encounters: "(1) an arrest, requiring the police to have probable cause; (2) an investigatory stop, requiring the police to have specific and articulable facts to give rise to a reasonable suspicion; and (3) a voluntary encounter initiated by non-coercive police questioning." *United States v. High*, 921 F.2d 112, 115 (7th Cir.1990). Bell claims that before she consented to the search of her bags, the police seized her in violation of the fourth amendment. Bell rightly does not challenge the initial questioning.[1] Rather, Bell argues that the questioning escalated into an investigatory stop when Officer Robert Glynn told her, "Don't even think it. I run the 50–yard dash in six seconds."

Bell contends that Glynn made the statement, and that he made it before discovering that she was travelling under a false name—the point at which the parties seem

* The Hon. James T. Moody, District Judge of the United States District Court for the Northern District of Indiana, is sitting by designation.

1. This court has held that "[t]he police 'do not violate the fourth amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if he is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions.'" *Johnson*, 910 F.2d at 1508 (quoting *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion)).

to agree reasonable suspicion arose.[2] Glynn did not deny making the statement, but did testify that he could not remember having made the statement.

In determining whether a seizure occurred, the crux of the inquiry is whether "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (plurality opinion of Stewart, J.). *See United States v. Berke*, 930 F.2d 1219, 1221 (7th Cir.1991); *United States v. Espinosa–Alvarez*, 839 F.2d 1201, 1205 (7th Cir.1987). If a reasonable person would have felt free to leave, "the encounter was consensual, and the fourth amendment is not implicated." *High*, 921 F.2d at 115. In denying Bell's motion to suppress, the district court found that the encounter remained consensual.[3] Although the district court did not make an explicit finding

vis-à-vis the 50–yard dash statement, it did generally credit Glynn's testimony over Bell's. Moreover, the district court specifically found that Bell "was aware that she would have been permitted to leave,"[4] and that Glynn informed Bell "that she was free to leave."[5] The record supports these findings. Accordingly, the district court did not err in denying Bell's motion to suppress. The district court's judgment is AFFIRMED.

RIPPLE, Circuit Judge, concurring.

I join the judgment of the court and agree with the majority's essential holding that, as an appellate court, we are bound by the findings of fact of the district court.

Officer Glynn's statement was an important and surprisingly vague one.[1] It was relevant to the central issue before the court. I respectfully suggest that it would

---

**2.** The drug courier profile alone is insufficient to establish reasonable suspicion.

**3.** Obviously, the encounter became non-consensual when the police arrested Bell. By then, however, probable cause clearly existed.

**4.** The district court couched this specific finding in subjective terms, but clearly understood that a reasonable person standard applied. The court stated, "The standard really is under the circumstances whether a reasonable person would believe himself or herself to be in custody."

**5.** Consequently, even if the 50–yard dash statement was made before Glynn learned that Bell was travelling under a false name, the later statement that Bell was free to leave acted as a release which sufficiently diminished any taint from the prior stop. *See United States v. Montilla*, 928 F.2d 583, 590 n. 3 (2nd Cir.1991) (illegal stop does not invalidate consent to search if taint of initial stop was dissipated before consent was given). *See also Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975).

**1.** The cross-examination of Officer Glynn included the following:
Q. Is it not true that you said to her: Don't even think about it. I do the 60 yard dash in five seconds?
A. Sir, I don't remember that.
Q. Officer Glynn, you do remember running for the Chicago Police Department on their team, don't you?
A. Yes.

Q. Is it not a fact that you—do you run, Officer? Aren't you a runner?
A. Yes.
Q. Is it not a fact that you run in various marathons? Isn't that a fact?
A. Yes.
Q. How many marathons have you ran in this year?
A. Four, five.
Q. What type of mileage were those marathons?
A. Five, six miles.
Q. Is it not a fact that you told her don't even think about it because you—and you told her how fast you run. You were proud of it?
A. Actually I am a very slow runner. I couldn't probably catch her if she ran. I don't—
Q. You don't think you could—
A. It is something I might say, but I don't remember saying it.
Q. Something you might say?
A. Something I might say.
Q. Isn't it something you might say right in the beginning when Mr. Haywood was escorted by the arm away from her presence? Isn't it something you might say?
A. Counselor, I am sure that Mr. Haywood was not carried away from the scene by his arm.
Q. My more specific question, when Mr. Haywood left with two officers in their presence and they took the luggage, isn't it true that you told her something about how fast you are and don't even think about leaving?
A. I don't remember.
Tr. at 110–11.

have been quite appropriate for the district court to deal explicitly with it in reaching its determination.