UNITED STATES of America,
Plaintiff–Appellee,

v.

Alice WITHERS, Defendant–Appellant.

No. 89–3006.

United States Court of Appeals,
Seventh Circuit.

Argued May 28, 1992.

Decided Aug. 14, 1992.

Scott T. Mendeloff (argued), Barry R. Elden, Asst. U.S. Attys., Office of the U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Stephen Levy (argued), Levy & Associates, Chicago, Ill., for defendant-appellant.

Before CUMMINGS and FLAUM, Circuit Judges, and LEE, District Judge.[*]

WILLIAM C. LEE, District Judge.

Alice Withers was stopped for questioning by members of the Chicago area Drug Enforcement Interdiction Task Force ("Task Force") at Eastern Airlines' baggage claim area in Chicago's O'Hare International Airport. Although Withers was not arrested at that time, after she was questioned, the officers detained Withers' garment bag. Shortly thereafter, a trained narcotics detection dog alerted to the presence of narcotics in the garment bag. On the following day, after obtaining a search warrant for the garment bag, Task Force officers opened the bag and discovered cocaine. After a hearing, the district court denied Withers' motion to suppress the evidence. Six days prior to the trial, Withers filed a motion to continue the trial, which was denied. A jury subsequently convicted Withers on the charge of possession with intent to distribute 500.29 grams of cocaine. Withers now appeals the denial of her motion to suppress, the alleged failure of the government to provide discovery material, and the denial of her motion to continue the trial. For the reasons stated below, we affirm.

## I. BACKGROUND

At approximately 1:00 p.m. on the afternoon of May 12, 1988, Alice Withers had just arrived in Chicago at O'Hare International Airport, after a non-stop Eastern Airlines flight from Miami, Florida. Withers' nervous behavior attracted the attention of non-uniformed members of the Task Force who were monitoring the Eastern Airlines baggage claim area. Task Force member officer Michael Bobko of the Chicago Police Department moved to a position about ten feet from Withers, who seemed to be travelling alone. From this vantage Bobko observed Withers nervously smoke a cigarette, anxiously study an airport uniformed security guard, tensely pace back and forth along the baggage conveyor, and generally appear quite jittery. Officer Bobko then witnessed Withers remove a Samsonite garment bag from the baggage conveyor as Withers closely surveyed the nearby security guard. With her pulse visibly racing in her neck, With-

* The Hon. William C. Lee, of the Northern District of Indiana, is sitting by designation.

ers studied the area, drew a deep breath, hoisted the garment bag over her shoulder, and departed from the baggage claim area toward the center concourse.

 Officer Bobko then approached Withers, displayed his credentials, and asked Withers to speak with him.[1] At Bobko's request, Withers produced her airline ticket, which was in Withers name. The ticket information indicated that it had been purchased on May 6, 1988, for round trip travel between Chicago and Miami, leaving Chicago on May 9, returning on May 12, 1988.[2] Withers further produced an Illinois driver's license to identify herself. Withers informed Bobko that she recently had two weeks vacation, and decided to spend the last two days of that vacation visiting friends at a condominium in Florida. Bobko next asked Withers whether she owned the items in the garment, to which she replied, "yeah, sure, it's all my stuff." Shortly thereafter, Bobko asked Withers if she were carrying any packages of which Withers did not know the contents. To this Withers initially indicated, "no", however, Withers quickly recanted, claiming that the bag felt heavier than when she packed it in her hotel that morning, and that she did not notice the weight difference earlier because the bellman at the hotel carried the bag to her taxi that morning. Detecting an inconsistency in Wither's story, Bobko then requested that Withers explain her previous statement that she had stayed at a friend's condomin-

ium. Withers had no reply. Next, Bobko asked Withers if Withers was carrying any narcotics in the bag. Withers denied knowledge of carrying any narcotics.

At this juncture, Task Force member Special Agent Steven Orr of the Drug Enforcement Administration ("D.E.A.") joined Bobko, displaying his credentials. Upon Bobko's request, Withers, physically trembling and becoming pale, declined to consent to a search of the garment bag. Bobko instructed Withers that they could search the bag without her consent. Withers then asked Bobko if she needed an attorney. Bobko explained that Withers was not under arrest, that she was free to leave, and could call an attorney.[3] Upon Bobko's request, Withers consented to a search of her purse, and Bobko discovered no contraband therein. Bobko then asked Withers if Withers had ever been arrested on drug charges. Withers replied that her last drug related arrest was in Chicago, for transporting three pounds of marijuana for a friend.

Bobko then informed Withers that he and Agent Orr were going to detain the garment bag at the airport D.E.A. office for a short period in order to allow a trained narcotics detection dog to conduct an external "sniff" of the bag to determine whether narcotics were in the bag. The officers told Withers that she could accompany them to the area where the canine sniff would occur, or that Withers could obtain a receipt for the bag and leave.

---

1. Withers claims Bobko did not immediately identify himself as a police officer. The district court, however, found the testimony of Bobko more persuasive than Withers' testimony. Accordingly, our standard of review is limited to a determination of whether the district court's fact-finding was clearly erroneous, and requires us to grant "particular deference ... to the district judge who had the opportunity to hear the testimony and observe the demeanor of the witnesses." *United States v. Sullivan*, 903 F.2d 1093, 1096 (7th Cir.1990) (*quoting United States v. Espinosa–Alvarez*, 839 F.2d 1201, 1205 (7th Cir.1987)). Further, "we will not retry issues of fact or substitute our judgment with respect to such issues for that of the trial court." *Espinosa–Alvarez*, 839 F.2d at 1206, n. 3. Based on a review of the record, we find no clear error in the district court's evaluation of the witnesses or in the district court's other relevant factual find-

ings, discussed *infra*, notes 2–6 and accompanying text.

2. Withers argues that Bobko detained the airline ticket for a long period of time and did not immediately return the ticket after a brief inspection. Again, the district court found Bobko's testimony more credible than Withers' testimony. *See supra* n. 1 for our discussion of why we sustain the district court's fact-finding.

3. Withers claims that the officers told her that she was not under arrest, but was not free to leave, either. The district court discounted Withers' "disjointed" account of the events, after hearing the testimony and observing the witnesses' demeanor. *See supra* n. 1 for our discussion of why we sustain the district court's fact-finding.

Withers chose to get a receipt, agreeing to wait until Orr returned from the airport D.E.A. office with the receipt.

At Wither's request, she and Bobko moved to the side of the concourse and waited at a bench.[4] Approximately ten minutes later, Orr returned. Bobko then completed and handed the receipt to Withers. Withers asked Bobko what would happen if the narcotics detection dog alerted positively to the bag. Bobko explained that the officers would first seek a search warrant and would later seek an arrest warrant if the bag contained narcotics. At Bobko's request, Withers provided her driver's license and a credit card, so that the officers could make photo copies for identification purposes. Bobko then took possession of the garment bag. Withers informed the officers that she did not want to accompany them to the D.E.A. office for the canine sniff, but that she wanted to purchase some cigarettes and would return to their present location to wait for them to return her bag.

Approximately fifteen minutes later at the D.E.A. office, trained narcotics canine unit "Spike" positively alerted to Withers' bag, which was placed along side other similar pieces of luggage. Orr and officer Graham, also a member of the Task Force, then returned to the concourse where they had departed from Withers about twenty minutes earlier. The officers searched for ten to fifteen minutes but could not locate Withers. Withers says she went to an airport cocktail lounge for a drink and some cigarettes while she waited for the officers to return after checking her luggage. Withers claims that after waiting in vain for thirty minutes at the location of the confrontation, she went home since the officers did not return. However, after hearing the testimony, the district court found, "it is clear that she [Withers] did

not return and remain at the baggage area to wait for the agents."[5]

After obtaining a search warrant on May 13, 1988, Bobko and Orr opened the locked garment bag, and found 500.29 grams of cocaine, which was 95% pure. Withers was subsequently arrested and indicted for possessing with intent distribute cocaine, in violation of 21 U.S.C. § 841(a)(1).

## II. PROCEEDINGS

Prior to trial, Withers moved to suppress the evidence related to her arrest at the airport. After a lengthy hearing on that motion, Judge Nordberg denied the motion on February 9, 1989, finding that the officers' testimony was credible, and with regard to Withers, "did not find her testimony to be persuasive." The district court found Wither's testimony was "disjointed" and inconsistent, and observed that Withers "did not give the impression that she was testifying from her natural memory of the events."[6] The district court also found that the initial encounter between Bobko and Withers was consensual, and that the consensual encounter developed into an investigative stop and seizure of the bag at the time officer Bobko informed Withers that he was going to detain the bag for an external canine "sniff" examination. Likewise, the district court found that at the time Withers' garment bag was seized, the officers had reasonable suspicion to detain the bag for the canine sniff, and that the fifteen to twenty minute detention of the garment bag was not undue delay.

At the time it denied the motion to suppress, the district court set Withers' trial for May 8, 1989. On May 3, 1989, Withers filed an emergency motion for continuance of the trial date. This motion was denied on the following day. After a jury trial, Withers was convicted and sentenced to

---

4. Withers argues that Bobko moved her over to the bench area shortly after Bobko initially confronted her. The district court found that the officers and Withers did not move from the center of the concourse to the bench area until the officers told Withers that they were going to detain the bag for a canine sniff of the bag. *See supra* n. 1 for our discussion of why we sustain the district court's fact-finding.

5. *See supra* n. 1 for our discussion of why we sustain the district court's fact-finding.

6. *See supra* n. 1 for our discussion of why we sustain the district court's evaluation of the witnesses.

eighty (80) months in prison and five (5) years of supervised release upon completion of the prison term. Withers now alleges the government failed to provide discovery material, although Withers did not argue this issue at trial.

### III. ANALYSIS

#### A. *Motion to Suppress*

Withers argues that shortly after she was stopped for questioning by officer Bobko, she and her baggage were illegally seized in violation of the Fourth Amendment, and therefore, the cocaine found in her garment bag should have been suppressed as evidence. Withers argues that the "investigative stop" encounter with officer Bobko was not based upon a reasonable suspicion, and argues that the encounter became an unconstitutional seizure of her person when officer Bobko maintained possession of Withers' airline ticket and driver's license, or at the very least when the officers asked Withers about any prior narcotics arrests. Therefore, Withers argues, the fruits of the seizure, the 500.29 grams of cocaine, should have been suppressed from the evidence at her trial, pursuant to *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

We will not disturb the district court's denial of the motion to suppress unless the decision was clearly erroneous. *United States v. Johnson*, 910 F.2d 1506, 1508 (7th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 764, 112 L.Ed.2d 783 (1991); *United States v. Edwards*, 898 F.2d 1273, 1276 (7th Cir.1990); *United States v. Williams*, 945 F.2d 192, 195 (7th Cir.1991). "Our inquiry is factually based and requires that we give particular deference to the district court that had the opportunity to hear the testimony and observe the demeanor of the witnesses." *Williams*, 945 F.2d at 195 (*quoting Edwards*, 898 F.2d at 1276).

■ Not all encounters between the police and citizens implicate the Fourth Amendment's prohibition on unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968); *Edwards*, 898 F.2d

at 1277. Three categories delineate the extent of Fourth Amendment protections associated with police-citizen encounters. In *Johnson*, we reviewed those categories and characterized them as follows:

> The first category is an arrest, for which the Fourth Amendment requires that police have probable cause to believe that a person has committed or is committing a crime. The second category is an investigatory stop, which is limited to a brief, non-intrusive detention. This is also a Fourth Amendment 'seizure,' but the officer need only have specific and articulable facts sufficient to give rise to a reasonable suspicion that a person has committed or is committing a crime. The third category involves no restraint on the citizen's liberty, and is characterized by an officer seeking the citizen's voluntary cooperation through non-coercive questioning. This is not a seizure within the meaning of the Fourth Amendment.

*Johnson*, 910 F.2d at 1508 (citations omitted); *Williams*, 945 F.2d at 195. Furthermore, the police do not violate the Fourth Amendment by merely approaching a person in an airport and asking that person questions regarding identification, airline ticket information, nature and length of the recent air travel, or whether the person would consent to a search of baggage. *Johnson*, 910 F.2d at 1509; *Edwards*, 898 F.2d at 1276; *see also Florida v. Bostwick*, — U.S. —, —, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991). With regard to the third category, the consensual encounter, "the degree of suspicion that is required is zero." *United States v. Serna–Barreto*, 842 F.2d 965, 966 (7th Cir.1988); *Williams*, 945 F.2d at 195.

■ We apply a "reasonable person" standard to determine whether a seizure has occurred in airport encounters between citizens and the police. *United States v. Teslim*, 869 F.2d 316, 321 (7th Cir.1989). "A person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Teslim*, 869 F.2d at 321 (*citing United States v. Mendenhall*, 446 U.S. 544,

554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980)); *see also Bostwick,* — U.S. at ——, 111 S.Ct. at 2386. The factors we consider in determining whether, in the totality of the circumstances, a reasonable person would believe she were free to leave include: whether the encounter occurred in a public or private place; whether the suspect consented or refused to talk to the police; whether the police informed the suspect that she was not under arrest and was free to leave; whether the police removed the suspect to another area; whether the suspect felt capable of refusing to consent to the search; and whether the suspect eventually departs the area without hindrance. *Johnson,* 910 F.2d at 1509; *Edwards,* 898 F.2d at 1274–1277. Other factors in this determination include: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or the tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall,* 446 U.S. at 554–555, 100 S.Ct. at 1877–1878; *Williams,* 945 F.2d at 196. Additionally, in *United States v. Notorianni,* 729 F.2d 520, 523 (7th Cir.1984), we held the lengthy retention of documents such as identification and airline tickets to be a factor in determining whether a stop has occurred. However, "the mere request for and voluntary production of driver's licenses and airplane tickets does not constitute a seizure, but rather falls into the category of a non-coercive police-citizen encounter." *United States v. Sterling,* 909 F.2d 1078, 1083 (7th Cir.1990).

■ The district court found that the initial encounter between the officers and Withers was not an investigative stop, but that the encounter eventually became a stop when officer Bobko informed Withers that they were detaining Withers' bag for the canine sniff. Although the district court did not expressly make the recommended "specific findings of fact concerning whether a reasonable person would have felt free to terminate the questioning", *United States v. Borys,* 766 F.2d 304, 310 (7th Cir.1985), *cert. denied* 474 U.S. 1082, 106 S.Ct. 852, 88 L.Ed.2d 893 (1986);

*Williams,* 945 F.2d at 196, the district court's finding that the initial encounter "had been only a consensual encounter" [sic] is supported in the facts.

A review of the surrounding circumstances reveals Withers should have objectively believed that she was free to terminate the questioning and exit the airport at her desire. The entire encounter occurred in a public O'Hare International Airport concourse—Withers was not coerced to move to a private area in the airport. The Task Force officers informed Withers that she was free to go and that she did not have to answer any questions. Withers was questioned in the concourse for only a brief period of time. Withers, in fact, did eventually leave the airport at about the time the officers were having the canine unit sniff the garment bag. Withers felt sufficiently free to refuse to consent to the requested search of her garment bag and to refuse to answer some of the officers' questions. Withers does not argue that the presence of Bobko and Orr was "threatening", that the Task Force officers displayed a weapon, physically touched the person of Withers, or used a tone of voice indicating that Withers' compliance with their request might be compelled. Furthermore, the district court found that Withers' testimony regarding the length of the retention of her airline ticket and driver's license was not credible, and accepted the officer's testimony that these documents were immediately returned to Withers. In view of all the surrounding circumstances, there was no objective reason for Withers to believe that she was not free to terminate the questioning and leave.

■ A consensual encounter can develop into an investigatory detention as a consequence of police behavior. *Sterling,* 909 F.2d at 1083; *United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983). Factors which may give rise to a reasonable suspicion that a suspect had committed or is committing a crime must be considered in light of the "totality of the circumstances—the whole picture" of each case. *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581,

1585, 104 L.Ed.2d 1 (1989); *Sterling,* 909 F.2d at 1083. That "totality" includes the officers' own experience, and the behavior and characteristics of the suspect. *Sterling,* 909 F.2d at 1083–1084. Among such factors are whether the suspect fits "the drug courier profile"; whether the suspect arrives from a known "drug source city" *Id.* at 1084; whether a suspect is visibly nervous; discrepancies in the suspect's account of where she had stayed during her trip; and equivocal answers regarding whether any other persons may have had access to the suspected baggage. *Edwards,* 898 F.2d at 1277. Furthermore, since an investigatory stop is based upon less than probable cause, its scope must be limited, it must be temporary—lasting no longer than necessary, and it must employ the least intrusive means reasonably available to promptly verify or dispel the suspicion. *Teslim,* 869 F.2d at 322; *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983).

■ The *Terry* stop and the bag confiscation were based upon reasonable suspicion supported by the following articulable facts that Withers was involved in criminal activity: Withers arrived on a flight from Miami, a city known as a source for drugs; Withers exhibited nervous behaviors (pacing, foot tapping, nervous chain smoking, trembling, and loss of color in her face); discrepancies regarding where Withers was staying while in Florida arose in her conversation with the officers; Withers' consent to a search of her purse, but refusal to consent to search of the garment bag; and Withers' admission that she had a previous narcotics trafficking arrest. The D.E.A. and other Task Force officers are trained to identify airport drug smugglers on the basis of factors such as these. *Sokolow,*

490 U.S. at 10 n. 6, 109 S.Ct. at 1587 n. 6; *Sterling,* 909 F.2d at 1084. The Task Force officers were entitled to interpret Withers' conduct in light of their experience. *See United States v. Brignoni–Ponce,* 422 U.S. 873, 885, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607 (1975); *Sterling,* 909 F.2d at 1084. Taken as a whole, trained Drug Enforcement Interdiction Task Force officers had reasonable suspicion to conduct an investigative stop of Withers.

■ We likewise agree with the district court that the length and scope of the detention of the garment bag was reasonable. We have previously held that police detention of luggage for twenty-five minute or even seventy-five minute periods are sufficiently brief to conform to the standards of the Fourth Amendment. *See Teslim,* 869 F.2d at 323; *Borys,* 766 F.2d at 313. Here, the Task Force officers detained Withers' garment bag for approximately fifteen to twenty minutes, clearly within the time limits the Supreme Court has established for such investigative seizures. *See United States v. Place,* 462 U.S. 696, 710, 103 S.Ct. 2637, 2646, 77 L.Ed.2d 110 (1983) (ninety minute detention of suspect's luggage for exposure to a sniff test is unreasonable). Therefore, we affirm the district court's denial of Withers' motion to suppress.

### B. Discovery Materials

■ Withers contends she was denied a fair trial by the government's failure to provide four documents she claims were discoverable and pivotal to her case. With respect to three of the four documents,[7] Withers did not timely argue the matter at the district court.[8] Therefore, absent plain error, the right to raise the issue on appeal

---

7. The first document is a state application for a search warrant for the garment bag; the second is agent Orr's grand jury testimony transcript; and the third is officer Bobko's notes, which were destroyed when information therein was incorporated into the officer's report.

8. Well after the district court's June 9, 1989 deadline for filing post-trial motions, Withers attempted to raise these discovery issues in a July 17, 1989 motion for a new trial. Generally such motions must be filed within seven days

after the verdict or within the original time period for such motions as established by the district court. *See* Fed.R.Crim.P. 33; and *United States v. Hocking,* 841 F.2d 735, 736 (7th Cir.1988) (district courts lack authority to extend time for filing untimely motions under Fed.R.Crim.P. 29, 33, 34, and 35, except as provided therein). Withers' motion for a new trial was denied as untimely. On appeal, Withers does not argue that the denial of that motion was error.

has been waived. *United States v. Asu-bonteng*, 895 F.2d 424, 428 (7th Cir.1990), *cert. denied sub nom. Rivers v. United States*, 494 U.S. 1089, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990). Plain error exists only when we are convinced that the alleged transgression is "an actual miscarriage of justice", resulting in "the conviction of one who but for the error probably would have been acquitted." *United States v. Silverstein*, 732. F.2d 1338, 1349 (7th Cir.1984), *cert. denied*, 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985). Moreover, "[t]he nonproduction of documents amounts to a constitutional violation only if it deprives the defendants of a fair trial." *United States v. Balistrieri*, 779 F.2d 1191, 1221 (7th Cir.1985), *cert. denied sub nom. DiSalvo v. United States*, 475 U.S. 1095, 106 S.Ct. 1490, 89 L.Ed.2d 892 (1986).

■ The record contains no support for Withers' assertion that absent the alleged discovery violations concerning these three documents, Withers would have been acquitted. Withers offers nothing more than mere speculation that the government "tailored" the testimony of witnesses regarding the length of time the Task Force officers held Withers' airline ticket and driver's license. For example, Withers offers no argument that she was actually innocent of the offense for which she was convicted. We are not convinced that had Withers received these three documents she would have probably been acquitted. Therefore, we will not disturb the district court's order on the basis of the nonproduction of these three discovery documents.

While at the district court, Withers did argue that she did not receive timely access to the fourth document, agent Orr's July 20, 1988 report of an interview with Michael Greenwald. Therefore, we apply the stricter "abuse of discretion" standard when reviewing this discovery objection. *United States v. Phillips*, 854 F.2d 273, 277 (7th Cir.1988).

The government provided a copy of the report of the Greenwald interview to Withers ten days prior to trial. However, Withers claims the report of the interview was relevant to the earlier suppression hearing

because the confiscated cocaine belonged to Greenwald. Unknown to the Task Force officers at the time of the May 12, 1989 airport encounter with Withers, was that Greenwald was with Withers in Miami, and had arrived at O'Hare on the same flight with Withers. In the report, Greenwald claimed Withers was actively involved in transporting the cocaine, and further, that Withers sells drugs from a Chicago area apartment.

■ Under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), defendants have a constitutional right to discovery of evidence that is material to the issue of guilt. The *Brady* rule requires the government to disclose exculpatory evidence. *United States v. Bagley*, 473 U.S. 667, 675–676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985). Evidence is also "material for *Brady* purposes ... if it may be used to impeach a prosecution witness." *Phillips*, 854 F.2d at 277 (*citing United States v. Agurs*, 427 U.S. 97, 112–114, 96 S.Ct. 2392, 2401–2402, 49 L.Ed.2d 342 (1976)). However, such evidence is material for *Brady* purposes only if there is a reasonable likelihood that, had the evidence been disclosed, the outcome of the proceedings would have been different. *Phillips*, 854 F.2d at 276 (*citing Bagley*, 473 U.S. at 682, 105 S.Ct. at 3375). As we have observed, "*Brady* does not grant criminal defendants unfettered access to government files." *Phillips*, 854 F.2d at 277 (citations omitted).

The Greenwald interview report is not exculpatory, and we fail to comprehend how the outcome would have changed regardless of when Withers received the Greenwald report. In the report, Greenwald further supported the government's case against Withers, relating that: at the time of the arrest Greenwald was living with Withers; Withers was involved in a drug distribution network with a Norman Levin, who paid Withers' counsel a $10,000 cash retainer; Greenwald accompanied Withers on the drug purchasing trip to Miami, which was financed by Levin; Withers placed the cocaine in her garment bag while in Miami on the morning of May 9,

1988; and Withers continued to sell drugs in the Chicago area while her case was awaiting trial. Concerning the nonproduction of these documents, we find no error which deprived Withers of a fair trial.[9]

### C. Motion to Continue

■ Lastly, Withers contends the district court wrongfully denied her motion to continue the trial. This motion was made on May 3, 1989, three months after the trial setting, and less than one week prior to the May 9 trial. Withers' trial counsel claims such a continuance was necessary because more time was needed to consider the report of agent Orr's interview of Greenwald, which her counsel received ten days before trial. Withers also argues the denial of her requested continuance failed to permit her sufficient time to serve Greenwald with a trial subpoena.

In appealing the denial of the motion to continue, Withers carries a heavy burden. The decision concerning whether to grant a continuance is left to the broad discretion of the district court. *United States v. Tanner*, 941 F.2d 574, 585 (7th Cir.1991), *cert. denied* ── U.S. ──, 112 S.Ct. 1190, 117 L.Ed.2d 432 (1992); *United States v. Turk*, 870 F.2d 1304, 1307 (7th Cir.1989). To establish that abuse of discretion, Withers must show that the denial of the continuance was arbitrary, and that actual prejudice resulted from the district court's decision. *Turk*, 870 F.2d at 1307.

In its exercise of sound discretion, the district court denied the motion to continue, declaring that the motion:

> is not going to be used as a device to try to stall or evade or avoid trial in this case ... There has been plenty of time for preparation. There has been no, as far as I can see, inability on the part of counsel to prepare this case. It is set for

trial on the 8th. We are going to go ahead and try this case on the 8th ... I fail to see how there is any valid reason that has been given that would justify not having this trial take place at its long scheduled time for trial.

As discussed, *supra*, the Greenwald report indicated that Greenwald's testimony would have likely further proven Withers' culpability. Furthermore, due to their relationship, Withers was in a unique position of knowing about the possible impact, if any, of Greenwald's testimony well in advance of the trial, and could have subpoenaed Greenwald much earlier. Thus, the district court's denial of the motion to continue the trial was not an abuse of discretion, and Withers has not met the heavy burden of showing actual prejudice from the decision to deny her motion to continue.

### IV. CONCLUSION

Accordingly, Withers' claims are without merit, and her conviction is AFFIRMED.

---

9. Furthermore, the documents were not required to have been produced pursuant to the Jencks Act, 18 U.S.C. § 3500, Fed.R.Crim.P. 12(i), Fed.R.Crim.P. 16, or Fed.R.Crim.P. 26.2. The Greenwald interview report, the only document of the four of which Withers timely complained, is not a Jencks Act "statement", as Greenwald did not testify at the suppression hearing or at trial. *See United States v. Allen*, 798 F.2d 985, at 993–994 (7th Cir.1986). In addition to the requirement that the request for

discovery must be timely, requests for Jencks Act materials must be "sufficiently specific and particular." *United States v. Allen*, 798 F.2d 985, 993 (7th Cir.1986). However, the materials were not specifically requested in a timely manner, and were requested, if at all, in only an impermissible "fishing expedition." Even if the documents were wrongfully withheld from Withers, she can show no harm from not having access to the documents, as discussed, *supra*.