998 F.2d 1016
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Rose Mary FOLKS, Defendant-Appellant.
 No. 92-3546.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 15, 1993.*
Decided July 22, 1993.
 
 Before POSNER, FLAUM and EASTERBROOK, Circuit Judges.
 
 ORDER
 
 1
 Upon arrival at the Indianapolis airport on a flight from Phoenix, Rose Mary Folks was greeted by a most unpleasant surprise: several officers of the Drug Interdiction Task Force waiting for her in response to a tip that a woman fitting her description would be transporting nearly a kilogram of cocaine. The tip did not disappoint. A search of Folks's person turned up 980 grams of a powdery white substance that proved to be cocaine.
 
 
 2
 * Folks and the government dispute the circumstances surrounding the search. The district court found that Folks walked directly from her gate to a bank of public phones. When she did not get through on her call, she proceeded to walk down the concourse. Agents Jan Cotton and Gerald Ross, detectives from the Indianapolis Police Department and members of the task force, followed. Folks, appearing nervous to Cotton, rode an elevator to the baggage claim area at the lower level of the airport. There she went to another bank of phones.
 
 
 3
 Cotton, who was not in uniform, approached Folks at the phone area, identified herself as a police officer working on the task force, and asked Folks if she would mind talking. Cotton displayed her badge and photographic identification but no weapon. Folks agreed to speak with Cotton. During this encounter Cotton stood near the opening to the phone being used by Folks. Early in their interaction, Folks said she needed to place a call to her granddaughter. Cotton permitted the interruption. Cotton then asked to see Folks's plane ticket, which had been purchased in cash that day for one-way travel and was issued to "Mary Solkas." After examining the ticket, Cotton returned it to Folks. In response to Cotton's request, Folks also produced a driver's license that bore her actual name. Cotton returned the license as well.
 
 
 4
 Cotton then asked if she could search Folks's luggage and person. She told Folks that she did not have a warrant and that Folks was not required to consent to the search. At no time did Cotton raise her voice, discuss the presence of three other law enforcement officers in the area, or mention the potential use of dogs for a drug sniff test. Folks consented to a search of both her person and luggage. The search itself took place in a women's restroom so that Folks, by her own choice, would not have to face an intrusive search in public.
 
 
 5
 Three other officers stood nearby. None wore any visible identification marking them as law enforcement agents, displayed a weapon, or spoke directly with Folks. Folks agreed to allow one of the other detectives to search her bags. In the women's room, Cotton found two packages under Folks's blouse that later were determined to contain cocaine.
 
 II
 
 6
 * Folks argues that the district court erred by finding that she consented to a seizure and search of her person and should have suppressed the evidence. Not every encounter between a police officer and a citizen involves the Fourth Amendment. United States v. Adebayo, 985 F.2d 1333, 1337 (7th Cir.), cert. denied, 113 S.Ct. 2947 (1993); United States v. Withers, 972 F.2d 837, 841 (7th Cir.1992); United States v. Williams, 945 F.2d 192, 195 (7th Cir.1991). If an officer elicits the voluntary cooperation of a citizen through noncoercive questioning, the liberty of the individual is not restrained and the contact is consensual rather than a seizure. United States v. Black, 675 F.2d 129, 133 (7th Cir.1982). Mere police questioning does not constitute a seizure. See, e.g., Florida v. Bostick, 111 S.Ct. 2382, 2386 (1991); Florida v. Royer, 460 U.S. 491 (1983). "So long as a reasonable person would feel free 'to disregard the police and go about his business,' ... the encounter is consensual and no reasonable suspicion is required." Bostick, 111 S.Ct. at 2386 (citation omitted). A consensual encounter escalates into a seizure if the officer has no reasonable suspicion and " 'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " Michigan v. Chesternut, 486 U.S. 567, 573 (1988).
 
 
 7
 Folks maintains that she was coerced into giving consent.[1] First, she asserts that "the police officers threatened to use official force against her" by using police dogs in furtherance of their investigation. Appellant's Brief at 8. The court, however, discredited her testimony. It is not our place to reweigh the evidence or make credibility determinations anew. United States v. Trujillo, 959 F.2d 1277, 1384 (7th Cir.), cert. denied, 113 S.Ct. 277 (1992). Second, Folks makes the bare assertion that the manner of approach and the place where the search occurred "indicated a confinement of the defendant by the police officers." Appellant's Brief at 8. She does not elaborate, but we find her conclusion unsupported by the facts.
 
 
 8
 The initial encounter with Detective Cotton took place by a telephone booth in an airport terminal. We can scarcely conceive of a more quintessentially public place. Folks agreed to talk with the detective and stayed on, even after placing a phone call to her granddaughter. Cotton informed Folks that she did not have a search warrant and that Folks need not consent to the search, which occurred in a bathroom (but at the urging of Folks herself). Although three other officers were in earshot of Folks and Cotton during their discussion at the telephone booth, none wore a uniform or displayed a weapon so as to create a "threatening presence." Cotton herself did not reveal a weapon and never took on an intimidating manner, either by touching Folks or by raising the tone of her voice. The entire encounter between Folks and Cotton at the telephone area consumed no more than six minutes. Although the record does not reveal that Cotton ever explicitly told Folks she was not under arrest or free to leave, a reasonable person in Folks's situation would have believed that she was at liberty to end the encounter and go about her business.
 
 B
 
 9
 Folks also contests the district court's rejection of her request for a two-level reduction in her base offense level for "clearly demonstrat[ing] a recognition and affirmative acceptance of personal responsibility [her] criminal conduct...." Sentencing Guideline § 3E1.1(a). Folks bears the burden of proving that she deserves the decrease, United States v. Camargo, 908 F.2d 179, 185 (7th Cir.1990), and points to a pleading to support her claim:
 
 
 10
 Comes now the defendant in person and by counsel, Richard D. Gilroy, and acknowledges her responsibility for the offense herein and states that the purpose of the trial was to assert her constitutional rights to wit: her right to try and appeal the issue of search and seizure.
 
 
 11
 In denying the reduction, the court noted that Folks's testimony during the motion to suppress was not credible and that she was obstreperous during her interview with the probation officer. Because "the sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility," we will accord its judgment great deference on review, disturbing the denial only if it is without foundation. Id. at 185. Folks gives us no reason to find the district court's determination to be unfounded.
 
 
 12
 As with so many of these types of challenges, the thrust of Folks's argument on appeal is that the district court failed to make adequate findings on the issue. We repeat, once again, that if the record supports his conclusion, the judge need not spell out his rationale in minute detail. United States v. Beal, 960 F.2d 629, 635 (7th Cir.), cert. denied, 113 S.Ct. 230 (1992). What does speak volumes are Folks's rather antiseptic submission (filed ten days after the court found her guilty) and uncooperative behavior. They hardly qualify as a mea culpa and certainly do not indicate an expression of remorse that would entitle her to relief under the terms of § 3E1.1(a).
 
 
 13
 AFFIRMED.
 
 
 
 *
 The court granted Folks's petition for waiver of oral argument and considers this appeal pursuant to Circuit Rule 34(f)
 
 
 [1]
 Folks undercuts her two points with the puzzling admission that "it was proved by a preponderance of evidence that the defendant consented to a search." Appellant's Brief at 12