16 F.3d 1226
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 UNITED STATES of America, Plaintiff/Appellee,
v.
Robin A. VONE, also known as Terry Von, Defendant/Appellant.
 No. 92-3160.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 9, 1994.*
Decided Feb. 17, 1994.
 
 Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division, No. 92-14-CR-01; S. Hugh Dillin, Judge.
 S.D.Ind.
 AFFIRMED.
 Before ESCHBACH, FLAUM and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Robin Vone unsuccessfully moved to suppress two kilograms of cocaine found by officers of the Indianapolis Police Department during a search of her suitcase at the Indianapolis International Airport. Vone entered a conditional plea of guilty to possessing the cocaine with intent to distribute it in violation of 21 U.S.C. Sec. 841(a)(1), reserving the right to appeal the denial of her motion to suppress. See Fed.R.Crim.P. 11(a)(2). We affirm.
 
 I.
 
 2
 On the morning of February 1, 1992, Sergeant Gerald Ross of Dallas-Fort Worth, Texas Drug Enforcement Task Force. Special Agent Hughes advised Sergeant Ross that he had learned from an informer that a woman named "Terry Von," who would be arriving at the Indianapolis International Airport that morning on a flight from Oakland, California, might be carrying drugs. He told Sergeant Ross that "Terry Von" had purchased a one-way airline ticket for American Airlines' flight number 1070 to Indianapolis from Oakland, via Dallas-Fort Worth, for $519.00 cash; had booked her seat on the flight at 11:28 p.m. on January 31, 1992, picked up the ticket at 12:08 a.m. on February 1, 1992, and boarded the flight shortly thereafter; and had checked a single black, hard-sided suitcase. Special Agent Hughes described "Terry Von" as a black female, twenty to twenty-two years old, weighing about 130 pounds, with processed hair, and wearing a black coat.
 
 
 3
 Sergeant Ross called Detectives Janet Cotton and Matthew Mount, who were also members of the Airport Drug Interdiction Unit. The three met at the airport between 10:00 and 10:30 a.m. on February 1. Detective Mount, a certified handler of narcotics-detection dogs, brought the Indianapolis Police Department's detection dog, Garp, with him. Detective Mount placed Garp in a holding pen at the airport. At around 11:30 a.m., the three officers observed the only black woman on flight number 1070 disembark from the airplane. The woman, Robin Vone, ran and then hurriedly walked past other passengers to the baggage claim area. At the baggage claim area, the officers observed Vone meet a black male. Vone and the black male appeared to recognize each other. The two walked to the baggage carousel and talked while waiting for the luggage to be unloaded. When the luggage came out on the baggage carousel, the officers saw Vone pick up a black, hard-sided suitcase matching the description previously given to Ross. Vone and the black male then turned and walked toward an exit.
 
 
 4
 Sergeant Ross approached Vone, identified himself as a police officer, and displayed his badge and identification. He asked Vone if he could speak to her, and Vone consented. Sergeant Ross then asked Vone to step out of the main thoroughfare of pedestrian traffic to an area behind some chairs, approximately ten feet away. Vone also consented to this. As Sergeant Ross, Vone, and the black male walked away from the baggage carousel, the black male appeared to become nervous. He walked behind a pillar, quickened his steps, and left the airport. Detective Mount followed him and identified himself as a police officer, but the black male sprinted away from Mount. Detective Mount gave chase, but the black male got into a car, locked the doors, and sped away.
 
 
 5
 Meanwhile, inside the airport, Vone denied knowing the black male. Sergeant Ross asked Vone if he could inspect her airline ticket and identification. Vone handed Detective Ross her airline ticket, but stated that she had no identification. Sergeant Ross returned the airline ticket to Vone and explained that he, Detective Cotton, and Detective Mount were investigating drug trafficking to and from source cities. Sergeant Ross asked Vone if she would agree to a pat-down of her person and a search of her suitcase. He advised Vone that she could refuse to consent to the search. Vone consented to both the search of her suitcase and the pat-down. Detective Cotton performed the pat-down, but recovered no contraband. Sergeant Ross left to check on Detective Mount, and returned with Detective Mount a few minutes later. Sergeant Ross attempted to open the suitcase, but it was locked, and Vone said she did not have a key. Sergeant Ross then asked Vone if she would accompany Detective Cotton and him to the office of the airport police department where they would try to open the suitcase. Vone consented to this. On the way to the office, Sergeant Ross advised Vone that she was free to leave the airport while the officers searched her suitcase, but Vone stated that she preferred to stay with the suitcase. Vone was further advised that she could have a receipt for her suitcase if she wished to leave, and that the suitcase would be delivered to her later. Vone declined to take a receipt.
 
 
 6
 Once in the office, the door to which was open, Vone was again advised by Sergeant Ross that she was free to leave, but Vone elected to stay with the suitcase. A consent-to-search form was prepared for Vone's signature, but Vone refused to sign it, stating that while she would consent to the search, she would not sign anything because her sister had gotten into trouble one time for signing something for the police. While Sergeant Ross attempted to open the suitcase with a set of keys provided by the airport police department, Vone claimed the suitcase might not be hers. After trying for fifteen to twenty minutes to open the suitcase with the keys, Vone was asked if she would consent to the suitcase being forcibly opened. Vone refused, whereupon Detective Mount advised her that he was going to subject the suitcase to a dog sniff. Detective Mount retrieved Garp from his holding pen and presented him with several objects in the office, including Vone's suitcase. Garp gave a positive indication on the suitcase for a controlled substance. Based upon Garp's positive indication, Detective Mount arrested Vone and placed her in a holding cell. Detective Cotton obtained a search warrant for the suitcase from a state court judge. A search of the suitcase revealed approximately two kilograms of cocaine.
 
 
 7
 In denying Vone's motion to suppress the cocaine, the district court concluded that: (1) the initial encounter in the baggage area between Vone and the police officers was consensual; (2) a reasonable person in Vone's position would have felt free to leave at any time before Vone withdrew her consent to search the suitcase; and (3) once Vone refused to consent to the suitcase being forcibly opened, the officers reasonably suspected that Vone was carrying drugs and, as such, justifiably detained her. We will not disturb the district court's finding that the cocaine discovered in Vone's suitcase should not be suppressed unless that finding is clearly erroneous. United States v. Withers, 972 F.2d 837, 841 (7th Cir.1992). A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).
 
 II.
 
 8
 There are three categories of police-citizen encounters. See United States v. Johnson, 910 F.2d 1506, 1508 (7th Cir.1990), cert. denied, 498 U.S. 1051 (1991). Two of them implicate the Fourth Amendment: an arrest, for which the Fourth Amendment requires probable cause to believe that a person has committed or is committing a crime, see Beck v. Ohio, 379 U.S. 89 (1964), and an investigatory stop--limited to a brief, non-intrusive detention--for which the officer need only have specific and articulable facts to give rise to a reasonable suspicion that a person has committed or is committing a crime, see Terry v. Ohio, 392 U.S. 1 (1968). The third category, a consensual encounter, which involves no restraint on a citizen's liberty, and is characterized by an officer seeking a citizen's voluntary cooperation through non-coercive questioning, does not implicate the Fourth Amendment. See United States v. Mendenhall, 446 U.S. 544, 553-55 (1980) (Stewart, J., with Rehnquist, J., concurring); Terry, 392 U.S. at 19 n. 16. Vone agrees with the district court that her initial encounter with the officers falls into the third category--that it was consensual. Vone's assessment of her encounter with the officers diverges from that of district court at the moment the black male fled the scene and was chased by Detective Mount. Vone contends that, at that point, the encounter changed from consensual to a full custodial arrest and seizure of her suitcase without probable cause.
 
 
 9
 The test for determining whether a police-citizen encounter is consensual is whether, in view of all the circumstances surrounding Vone's encounter with the police, a reasonable person in the same situation would have believed that she was free to leave. Mendenhall, 446 U.S. at 554 (Stewart, J., with Rehnquist, J., concurring); United States v. Black, 675 F.2d 129, 134 (7th Cir.1982), cert. denied, 460 U.S. 1068 (1983). If a reasonable person in the same situation as the defendant would have believed that she was free to leave, the encounter was consensual and the Fourth Amendment was not implicated. Cast in these terms, Vone's contention is that a reasonable person in her situation would not have believed that she was free to leave once the black male fled and Detective Mount chased him, whereas the district court's conclusion (and the government's contention on appeal) is that a reasonable person would have believed that she was free to leave until Vone refused to consent to the suitcase being forcibly opened and Detective Mount told her he planned to subject the suitcase to a sniff test.
 
 
 10
 Factors relevant to whether a reasonable person in Vone's position would have believed that she was free to leave include: (1) whether the police officers informed Vone that she was free to leave; (2) whether Vone consented to the search of her suitcase; and (3) whether she felt capable of refusing to consent to the search. See Withers, 972 F.2d at 842 (citing United States v. Johnson, 910 F.2d 1506, 1509 (7th Cir.1990), cert. denied, 498 U.S. 1051 (1991), and United States v. Edwards, 898 F.2d 1273, 1274-77 (7th Cir.1990)). The record indicates that Vone was capable of refusing to consent to the search of her suitcase after the incident involving the black male. Vone concedes that the officers did not coerce her into consenting to the search before the black male fled. The officers treated Vone no differently afterwards. The officers did not display their weapons, restrain Vone's movement, prevent her from holding the suitcase, or use language or a tone of voice indicating that compliance with their request to search the suitcase was compelled. See Mendenhall, 446 U.S. at 554-55 (Stewart, J., with Rehnquist, J., concurring). Nor did they tell Vone that they would seize the suitcase or arrest her if she refused to consent to the search.
 
 
 11
 It cannot be ignored that Vone verbally consented to the search of her suitcase not only before the incident involving the black male, but also after the incident as she sat with the police officers at the airport police department. Even if, as Vone suggests, the intervening incident rendered her initial consent nugatory (a proposition with which we do not agree), the officers justifiably relied on Vone's second verbal indication that she would consent to the search of her suitcase. As discussed above (and as suggested by the fact that Vone felt capable of refusing to give written consent to the search), a reasonable person in Vone's position would have felt capable of refusing to consent to the search.
 
 
 12
 Finally, and perhaps most significantly, Vone was advised at least three times after the incident involving the black male that she was free to leave: twice en route to the airport police department's office, and a third time upon the group's arrival at the office. As the district court noted, in light of such specific advice, a reasonable person in Vone's position would have felt free to leave. See Johnson, 910 F.2d at 1509; Edwards, 898 F.2d at 1276.
 
 
 13
 Vone describes the incident involving the black male as if, upon being told he was free to leave, the black male walked away, and Detective Mount followed in hot pursuit. If that were the case, we would be inclined to agree with Vone that a reasonable person in her position would believe that she would be prevented from leaving if she tried. But that is not the case. The record indicates that the officers spoke only with Vone and, as Vone and the officers moved out of the pedestrian traffic to talk, the black male nervously walked away and quickly exited the airport. Upon learning that the man had disappeared, Detective Mount walked outside the airport to investigate. He did not chase the black male until he was outside the airport, he had identified himself as a police officer, and the black male sprinted away. Vone testified that she saw Detective Mount chase the black male, but the word "chase" was used by her attorney in a leading question, and Vone simply answered affirmatively. Moreover, Vone did not testify that her observation of Detective Mount pursuing the black male affected her ability to refuse to consent to the search of her suitcase. She continued to cooperate with the police officers after the black male fled, and expressed no reservations about doing so.
 
 
 14
 Vone also argues that, even if she was not seized when the black male fled, her suitcase was. She points out that, once the black male fled the airport, the officers continued to advise her that she could leave, but never said that she could take her suitcase with her. They told her that she could get her suitcase back only by taking a receipt for it and picking it up after it was searched. This argument has logical appeal but ignores the effect of Vone's voluntary consent to the search of her suitcase. Because Vone had not withdrawn her consent (although she felt capable of doing so), and she continued to cooperate with the officers, the officers justifiably sought to keep the suitcase so that they could examine its contents.
 
 
 15
 Vone and her suitcase were seized within the meaning of the Fourth Amendment when Vone refused to consent to a forcible entry into the suitcase. After that point, a reasonable person in Vone's position would not have believed that she was free to leave. The officers did not advise Vone that she was free to leave, and had Vone attempted to leave, the officers would have prevented her from doing so: All three officers testified that, when Vone refused to consent to a forcible entry into the suitcase, they believed that she was no longer free to leave. Moreover, Detective Mount told Vone that he was going to subject the suitcase to a dog sniff without seeking Vone's consent.
 
 
 16
 Vone concedes that the officers reasonably suspected she was carrying drugs in the suitcase, and that based on their suspicion the officers permissibly detained her to investigate. See United States v. Sokolow, 490 U.S. 1, 7-8 (1989); Terry, 392 U.S. at 30.[1] The issue becomes whether the officers' investigative detention of Vone was of a permissible scope. Vone contends that the officers' detention of her and her suitcase exceeded the scope of an investigative detention because the officers were obligated to use the least intrusive means available to verify or dispel their suspicions that she was carrying drugs in the suitcase. She relies on a statement by a plurality of the Supreme Court in Florida v. Royer, 460 U.S. 491, 500 (1983), that "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." Vone asserts that the officers could have been less intrusive by subjecting her suitcase to a sniff test as it proceeded along the baggage carousel rather than by subjecting the suitcase to a sniff test only after they were unable to open the suitcase.
 
 
 17
 Vone's contention lacks merit for two reasons. First, she complains about the officers' intrusions upon her from 11:30 a.m. until 12:30 p.m. As we have concluded above, Vone consented to these intrusions. Perhaps the officers might have been less intrusive during this time. But because the Royer plurality was referring to non consensual encounters, Royer does not stand for the proposition that the officers were required to use the least intrusive means to conduct their consensual search. Second, once the encounter became nonconsensual, the officers were not obligated to use the least intrusive investigatory techniques. In United States v. Sokolow, 490 U.S. at 10-11, the Supreme Court noted that Royer plurality's statement was directed at the length of the investigatory stop, not at whether the police had a less intrusive means to verify their suspicions. The Court noted that the reasonableness of an officer's decision to stop a suspect cannot turn on the availability of less intrusive investigatory techniques because "[s]uch a rule would unduly hamper the police's ability to make swift, on-the-spot decisions." Id. at 11; cf. United States v. Sharpe, 470 U.S. 675, 686-87 (1985) ("A creative judge engaged in post hoc evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished. But '[t]he fact that the protection of the public might, in the abstract, have been accomplished by less intrusive means does not, itself, render the search unreasonable." (quoting Cady v. Dombrowski, 413 U.S. 433, 447 (1973)). The fact that, in retrospect, the officers' investigative detention of Vone could have resulted in less of an intrusion on Vone than actually occurred had the officers conducted the sniff test as the suitcase proceeded along the baggage carousel (since, had they done so, Vone would not have been forced to sit in an office for ten minutes while Garp sniffed her suitcase) does not render the detention of Vone violative of the Fourth Amendment. The officer's detention of Vone ran afoul of the Fourth Amendment only if Vone was detained for a period longer than that allowed by the Fourth Amendment.
 
 
 18
 The duration of the officers' detention of Vone did not exceed that allowed by the Fourth Amendment. Vone was actually detained for only a short period of time. She withdrew her consent to a forcible entry into the suitcase at 12:30 p.m. It took a total of five to ten minutes for Detective Mount to retrieve Garp from his holding pen and for Garp to complete the sniff test on Vone's suitcase. What amounted to, at most, a ten-minute detention of Vone and her suitcase is well within the permissible time limits for investigative seizures: In United States v. Sharpe, 470 U.S. at 687, the Supreme Court held that a twenty-minute detention of a suspected drug-trafficker was permissible. In United States v. Withers, 972 F.2d at 843, we held that detention of the suspect's garment bag for fifteen to twenty minutes was permissible. We have also held that police detention of a suspect's luggage for twenty-five minutes, United States v. Teslim, 869 F.2d 316, 323 (7th Cir.1989), or even seventy-five minutes, United States v. Borys, 766 F.2d 304, 313 (7th Cir.1985), cert. denied, 474 U.S. 1082 (1986), is sufficiently brief to conform to the standards of the Fourth Amendment. Compare United States v. Place, 462 U.S. 696, 710 (1983) (ninety-minute detention of suspect's luggage for exposure to a sniff test is unreasonable).
 
 III.
 
 19
 The district court's finding that the encounter between Vone and the police officers was consensual until Vone refused to consent to a forcible entry into her suitcase is not clearly erroneous. The judgment of the district court is AFFIRMED.
 
 
 
 *
 On January 4, 1993, the parties filed a "Joint Petition To Submit Case Without Oral Argument." See Fed.R.App.P. 34(f); Cir.R. 34(f). By order dated January 7, 1993, we granted the parties' motion. The appeal therefore is submitted on the briefs and the record
 
 
 [1]
 In any event, we are convinced from our examination of the record that, when they detained Vone, the police officers had within their knowledge specific and articulable facts giving rise to a reasonable suspicion that Vone was carrying drugs in the suitcase