978 F.2d 1262
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gary P. KAMMERUD, Defendant-Appellant.
 No. 91-3913.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 21, 1992.*
Decided Oct. 23, 1992.
 
 Before BAUER, Chief Judge, CUMMINGS, Circuit Judge and ESCHBACH, Senior Circuit Judge.
 
 ORDER
 
 1
 While in police custody on August 22, 1990, Gary P. Kammerud gave authorities an incriminating statement concerning his involvement in cocaine dealing. Kammerud challenges the district court's denial of his motion to suppress this statement. Kammerud argues that the statement was taken in violation of his Fifth Amendment right to have counsel present during custodial questioning and that it was not made voluntarily. Specifically, he claims that (1) he requested an attorney when he made a statement to the effect: "I wonder if I should give my attorney a call," and (2) he did not knowingly, intelligently, and voluntarily waive his Fifth Amendment rights. In addition, he argues that he made the incriminating statement involuntarily because of his mental and physical condition at the time.
 
 I. RIGHT TO COUNSEL
 
 2
 Kammerud first argues that he invoked his right to counsel near the beginning of the interview and that all questioning should have stopped at that point until his attorney was present. Under Miranda v. Arizona, 384 U.S. 436, 444-45 (1966), police questioning of a person in custody may not proceed if he "indicates in any manner, at any stage of the process, that he wishes to consult with an attorney before speaking." A request for an attorney, to be valid, need not be clear and unequivocal as long the suspect's words or actions reasonably may be construed as a request for an attorney. United States ex rel. Espinoza v. Fairman, 813 F.2d 117, 124 (7th Cir.), cert. denied, 483 U.S. 1010 (1987).
 
 
 3
 In this case, the interview began with Deputy Sheriff Lindholm recounting the details of the investigation of Kammerud. Kammerud then mentioned that he had been using an attorney named Bruce Anderson and made a statement to the effect "I wonder if I should give him a call." Kammerud agreed on cross-examination that in making this statement he was basically thinking out loud. 2 Tr. 153. This statement was, at best, ambiguous as to whether it was an invocation of the right to counsel. This circuit has not explicitly passed on the effect of an ambiguous request for an attorney.[1] In the parallel situation where the suspect equivocally invokes his right to remain silent, we have said
 
 
 4
 [o]fficers may ask questions intended to clarify whether the suspect was attempting to invoke his right to remain silent. They must refrain, however, from any words or actions "that the police should know are reasonably likely to elicit an incriminating response from the suspect."
 
 
 5
 United States v. D'Antoni, 856 F.2d 975, 980-81 (7th Cir.1988) (citations omitted) (quoting Rhode Island v. Innis, 446 U.S. 291, 301 (1980)). This is essentially the approach taken by other circuits that have considered an ambiguous invocation of the right to counsel. See United States v. Towne, 899 F.2d 1104, 1108 (11th Cir.), cert. denied, 111 S.Ct. 536 (1990); United States v. Gotay, 844 F.2d 971, 975 (2d Cir.1988); United States v. Fouche, 833 F.2d 1284, 1287 (9th Cir.1987), cert. denied, 486 U.S. 1017 (1988); United States v. Porter, 776 F.2d 370 (1st Cir.1985); Nash v. Estelle, 597 F.2d 513 (5th Cir.1979) (en banc), cert. denied, 444 U.S. 981 (1979); United States v. Riggs, 537 F.2d 1219, 1222 (4th Cir.1976). We agree with these authorities.
 
 
 6
 Applying this analysis to Kammerud's case, we conclude that Deputy Lindholm and Special Agent Schulte responded properly when Kammerud thought out loud about calling his attorney. The magistrate who conducted the suppression hearing specifically found that
 
 
 7
 [t]he officers immediately responded to Mr. Kammerud that his discretion to exercise his right to counsel was entirely up to him. [Deputy] Lindholm then immediately advised the defendant of his constitutional rights. He gave the defendant a Polk County Statement of Rights Form and asked the defendant to put a mark through each of the numbered statements after it had been read to him by Deputy Lindholm, and the defendant did that.... And then defendant responded in his own handwriting to the questions, that he did understand those rights and that he was willing to waive them, and he did not want to consult an attorney before answering questions or making a statement; and then he signed that form.
 
 
 8
 1 Tr. 8. We must accept these factual findings as true unless we conclude that they are clearly erroneous. United States v. Parker, 936 F.2d 950, 953 n. 1 (7th Cir.1991). Since they are adequately supported by the record of the suppression hearing, 2 Tr. 17, 92-93, there is no clear error. See Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").
 
 
 9
 In light of the magistrate's findings, it is clear that the officers narrowed their discussion to whether Kammerud wished to have an attorney present. In response to Kammerud's thinking out loud about whether he should request an attorney, both officers told Kammerud that that was his decision to make. 2 Tr. 17. They then carefully advised him of his rights. Id. at 93. They did not ask any questions that were reasonably likely to elicit an incriminating response. Kammerud then indicated that he wished to proceed without an attorney. Id. Thus, the officers simply cleared up the ambiguity in Kammerud's prior statement. In so doing, the officers did not violate Kammerud's Fifth Amendment rights.
 
 
 10
 Kammerud next argues that, despite signing a waiver form, he did not knowingly, intelligently, and voluntarily waive his Fifth Amendment rights. It is clear that we cannot presume from a suspect's silence that he waived his Fifth Amendment rights. Miranda, 384 U.S. at 475. Rather, the government bears the burden of proving by a preponderance of the evidence that he waived them. Colorado v. Connelly, 479 U.S. 157, 168 (1986). In determining whether the government has met its burden, we look at the totality of the circumstances to see whether the suspect made a knowing, intelligent, and voluntary relinquishment or abandonment of a known right. Moran v. Burbine, 475 U.S. 412, 421 (1986); Edwards v. Arizona, 451 U.S. 477, 482 (1981).
 
 
 11
 Kammerud argues that we should not find a valid waiver in view of the following circumstances: Kammerud was arrested when he showed up for a routine meeting with his parole officer; he had minimal prior contacts with the criminal justice system based on relatively minor offenses; at the time, he was suffering severe medical difficulties, including an extremely painful abscessed tooth and mental confusion and disorientation due to his failure to take insulin for his diabetic condition that morning; and the interviewing officers were aware of these difficulties and refused Kammerud's requests for medical help.
 
 
 12
 We are unable to accept Kammerud's argument because it rests on factual assumptions contrary to the magistrate's factual findings, which we are bound to accept. For example, the magistrate rejected Kammerud's claim that he told the officers of his medical distress and demanded immediate medical attention. 1 Tr. 3-4. Based on Kammerud's medical records and inconsistencies in his testimony, the magistrate also questioned Kammerud's claim that he was suffering a medical emergency arising either from his failure to take insulin that morning or from his abscessed tooth. Id. at 21-23. In addition, we are not persuaded that Kammerud's level of familiarity with the criminal justice system is a factor in his favor. Deputy Lindholm and Agent Schulte had questioned Kammerud several months before, initially about a vehicle theft ring. When the discussion turned to drugs, Kammerud immediately asserted his right to counsel and the questioning ceased. 1 Tr. 5. Clearly, Kammerud was aware of his rights and had experience in how to exercise them.
 
 
 13
 Kammerud's argument rests on factual assumptions that we cannot accept in view of the magistrate's findings. In light of the totality of the circumstances, we reject Kammerud's claim that his waiver of his Fifth Amendment rights was not knowing, intelligent, and voluntary.
 
 II. VOLUNTARINESS OF STATEMENT
 
 14
 After waiving his rights, Kammerud provided the officers with details of his cocaine dealings. Kammerud now argues that he did not make this statement voluntarily. He points to a series of factors that he claims demonstrate that his statement was involuntary--the unexpected nature of his arrest, his "severe medical problems," the officers' recitation of the evidence against him, and their suggestion that his cooperation would be good for him.
 
 
 15
 In reviewing Kammerud's claim that his statement was involuntary, we bear in mind that
 
 
 16
 [a] confession will be adjudged "voluntary" if the government demonstrates that under the totality of the circumstances and by a preponderance of the evidence that it was not secured through psychological or physical intimidation but rather was the "product of a rational intellect and free will."
 
 
 17
 United States v. Haddon, 927 F.2d 942, 945 (7th Cir.1991) (quoting United States v. Holleman, 575 F.2d 139, 142 (7th Cir.1978)).
 
 
 18
 We find no basis on which to conclude that Kammerud's statement was involuntary. First, the magistrate rejected Kammerud's claims of having "severe medical problems" during the interview. Second, it is acceptable for the authorities to promise a suspect that his cooperation will be made known to the prosecuting attorney. United States v. Rodgers, 755 F.2d 533, 546 (7th Cir.), cert. denied, 473 U.S. 907 (1985); United States v. Springer, 460 F.2d 1344, 1347 (7th Cir.), cert. denied, 409 U.S. 873 (1972). Finally, Kammerud notes that the officers began the interview by "confronting him with the evidence against him to heighten his fear and anxiety." Kammerud cites no authority suggesting that this is an improper interrogation technique.[2] We conclude that Kammerud's statement was voluntarily made.
 
 III. CONCLUSION
 
 19
 For the foregoing reasons, we conclude that the district court did not err in not suppressing the incriminating statement Kammerud made to authorities on August 22. We therefore AFFIRM Kammerud's conviction.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). Appellant filed a statement indicating that he did not believe that oral argument was needed in this case. Accordingly, the appeal has been submitted on the briefs and record
 
 
 [1]
 United States v. Nielsen, 392 F.2d 849 (7th Cir.1968), is not directly on point because it involved an ambiguous waiver of the right to counsel after the suspect had clearly invoked that right
 
 
 [2]
 Perhaps Kammerud was thinking that confronting him with the evidence against him was "reasonably likely to elicit an incriminating response" and was thus impermissible "interrogation." Rhode Island v. Innis, 446 U.S. 291, 301 (1980) However, Kammerud did not make this argument, and the government did not have a chance to respond, so we will not consider it